In re AIR CRASH DISASTER AT STAPLETON INTERNATIONAL AIRPORT, DENVER, COLORADO, ON NOVEMBER 15, 1987.

MDL No. 751.

United States District Court,
D. Colorado.

Oct. 26, 1988.

ORDER MDL 751–13

SHERMAN G. FINESILVER, Chief Judge.

The court is in receipt of a motion to compel response to certain interrogatories and deposition responses by two of plaintiffs' liability expert witnesses, filed by defendants Continental Airlines, Inc. and Texas Air Corp. ("Continental"). The court has reviewed the pleadings, the Federal Rules of Civil Procedure and other authority relevant to the issue. The motion is GRANTED IN PART.

## I.

These cases arise out of the November 15, 1987 crash of a Continental Airlines DC-9 airplane en route from Denver, Colorado, to Boise, Idaho. Flight 1713, on take-off in a snow storm at Stapleton International Airport, crashed, overturned, and broke into several pieces. The accident killed 28 persons and injured 54 others. The pilot, copilot and a flight attendant were among the dead. The National Transportation Safety Board conducted an investigation into the crash and reported its findings on September 27, 1988.

Plaintiffs are residents of various states, including Arizona, Colorado, Idaho, New Jersey, and Washington. They claim the crash was the result of pilot inexperience, ineffectual pilot training and the willful, wanton and reckless disregard for passenger safety exhibited in Continental's mishandling of Flight 1713. Among the issues plaintiffs raise is the effect of Continental's alleged failure to properly remove ice from the wings of the aircraft.

Defendants deny the allegations of the various complaints in this consolidated action. Defendants deny that they were negligent in regard to aircraft deicing procedures. Defendants assert that plaintiffs' damages were caused by the acts, omissions, and/or fault of third parties over whom Continental has no control. Specifically, defendants have designated the City and County of Denver and the Federal Aviation Administration as culpable parties pursuant to C.R.S. § 13–21–111.5.

The court has jurisdiction over these civil actions pursuant to 28 U.S.C. § 1332, diversity of citizenship. On April 14, 1988, the Judicial Panel on Multidistrict Litigation conferred jurisdiction upon this court for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *In re Air Crash Disaster at Stapleton Int'l Airport,* 683 F.Supp. 266 (J.P.M.L.1988).

The matter comes before the court in regard to plaintiffs' designated experts in aeronautical engineering, wing design and the effect of ice contamination on aircraft wings. Pursuant to the discovery procedures outlined by this court, defendants noticed deposition of Dr. Donald H. Kennedy and Mr. Donald E. Summer. The notices of deposition included requests for production of various documents possessed by the experts.

At the opening of the depositions, plaintiffs objected to Defendants' Request 2.a, for all materials possessed by the experts relating to the case, and Request 2.b, for all written records of communications with attorneys or other experts in the case. Plaintiffs contend that the requests are beyond the scope of Rule 26(b)(4)(A) of the Federal Rules of Civil Procedure. Plaintiffs similarly object to Request 3 for copies of all trial and deposition transcripts of the expert prepared in other cases in which the witness testified as an expert. Plaintiffs finally objected to Request 8 for any other items in the expert's files relating to the case.[1]

During the course of the deposition of Dr. Kennedy, plaintiff counsel directed the witness not to answer three sets of questions. The first related to the expert's experience as a stunt pilot in air shows. The expert was also instructed not to answer questions regarding other litigation in which he had testified as an expert, including one specific occasion involving a helicopter crash. Defendants were also denied information about Dr. Kennedy's relationship with the law firm defending the deposition and with expert witness Summer in this and other litigation. Plaintiffs contend these issue as well are beyond the scope of Rule 26(b)(4)(A).

The dispute hinges on interpretations of Rule 26 by this and other courts regarding the extent to which a party may use discovery to obtain materials for the impeachment of an expert whose testimony will be central to the litigation at had. *See Norfin, Inc. v. International Business Machines Corp.,* 74 F.R.D. 529, 532–33 (D.Colo.1977); *Delcastor, Inc. v. Vail Associates, Inc.,* 108 F.R.D. 405, 408–10 (D.Colo. 1985); *Boring v. Keller,* 97 F.R.D. 404, 407 (D.Colo.1983). Plaintiffs contend the scope

---

1. Two other objections raised by plaintiffs and argued in defendants' motion have been resolved pursuant to Local Rule 403 and are no longer before the court.

of such discovery is limited to documents relied upon by the expert in preparing the opinions to which he will testify and that certain documents are protected by the attorney work product privilege. Defendants contend that they are entitled to discover various records of the experts' opinions in the field for the purposes of impeachment.

## II.

■ We find that the discovery of material relevant to the impeachment of an expert envisioned by courts construing Rule 26(b) is limited to materials possessed by an expert and related to the case at hand. *See In re IBM Peripheral EDP Devices Antitrust Litigation,* 77 F.R.D. 39, 41 (N.D.Cal.1977). Materials an expert reviews and then disregards in forming the opinion to which he will testify are relevant to the impeachment of the witness during trial. Discovery of all material possessed by an expert relating to the matter at hand develops a record which prevents "a sanitized presentation at trial, purged of less favorable opinions expressed at an earlier date." *Quadrini v. Sikorsky Aircraft Division,* 74 F.R.D. 594, 595 (D.Conn.1977). The Rule does not limit discovery to documents which *support* an expert's opinion. In forming an opinion, an expert "relies" upon material he finds unpersuasive as well as material supporting his ultimate position.

■ Furthermore, the privilege normally afforded attorney work product gives way to the realities of expert preparation in regard to materials presented to an expert for consideration in forming an opinion to which he will testify at trial. *In re IBM Peripheral EDP Devices Antitrust Litigation,* 77 F.R.D. 39, 41 (N.D.Cal.1977). An expert who was not an eye witness to the events about which he will testify obtains the majority of the material he considers through the attorneys who employ him. In these circumstances, plaintiffs' objection to the production of materials an expert obtains from counsel could become an impenetrable shield from the discovery of the relevant impeachment materials discussed above. The work product privilege "is no

exception to discovery under circumstances where documents which contain [an attorney's] mental impressions are examined and reviewed by expert witnesses before their expert opinions are formed." *Boring,* 97 F.R.D. at 407. Accordingly, all materials possessed by an expert in relation to a case in which he is expected to testify are discoverable.

■ These principles do not provide for unlimited discovery in regard to experts, however. Rule 26(b) prevents broad discovery, "unfettered by restrictions in scope." *Delcastor,* 108 F.R.D. at 410. Defendants' broad demand for materials and deposition testimony relating in any way to the experts' aeronautical experience is beyond the appropriate scope of Rule 26(b)(4)(A).

■ Testimony given during other proceedings and experiences regarding flight generally are collateral to the issues presented in this case. In this regard, we disagree with the Magistrate's opinion in *Bockweg v. Anderson,* 117 F.R.D. 563 (M.D.N.C.1987). A finding that conclusions and opinions offered in unrelated litigation fall within the scope of Rule 26 discovery would unnecessarily burden technical litigation with pre-trial inquiry into facts and issues wholly irrelevant to the case at hand. Defendants' general contention that they are entitled to develop material to be used during cross-examination does not convince this court to articulate a new general rule favoring burdensome production and deposition.

■ Contrary to defendants' interpretation of *Norfin,* 74 F.R.D. at 533, the limited scope of a Rule 26(b)(4)(A) inquiry into the background and experience of an expert witness does not include the production of every deposition or trial transcript given by the expert in any litigation. Nor does it allow for inquiry into the totality of the relationship between two experts or between an expert and the attorney defending his deposition. Rule 26(b)(4)(A) was designed to prevent abusive, costly "fishing expeditions" into the background of a testifying expert. *Delcastor,* 108 F.R.D. at 407. The focus of information to be gathered under the Rule, either for general understanding of an expert's position or for

impeachment, is on the events giving rise to the litigation at hand and the opinions to be received in evidence during that litigation. *See Baise v. Alewel's, Inc.*, 99 F.R.D. 95, 99 (W.D.Mo.1983). Defendants' request for all of a deponent's past testimony as an expert in all types of aircraft litigation is simply overbroad and beyond the scope of Rule 26. Defendants' request for a list of cases in which the expert has testified is more appropriate, however, as a reasonable means of identifying discoverable opinions an expert may have given regarding weather-effected air crashes similar to the case at hand.[2]

### III.

With regard to materials possessed by Dr. Kennedy and Mr. Summer and to communications between experts employed in this litigation, defendants' motion is GRANTED as to materials and communications related to this litigation. With regard to deposition questions regarding other litigation, the Dr. Kennedy's stunt flying experiences, and the extent of an expert's relationship with counsel or other experts in unrelated cases, the motion is DENIED. Because we find the positions of the parties to be substantially justified, defendants' motion for reasonable attorneys fees and costs incurred in this matter, filed pursuant to Rule 37(a)(4), is DENIED.

IT IS HEREBY ORDERED that Dr. Kennedy and Mr. Summer shall produce all documents responsive to defendants' requests 2.a, 2.b and 8, dated October 3, 1988, and a list of cases in which Dr. Kennedy testified as an expert, as requested during his deposition October 5, 1988.

---

2. Depending on the parallels between two cases such statements may be relevant to the impeachment of an expert and admissible as prior inconsistent statements.