**Jerome J. KARN, et al., Plaintiffs,**

v.

**Ingersoll RAND, et al., Defendants.**

**No. 1:95–CV–321.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Sept. 26, 1996.

Edward L. Murphy, Jr., Miller Carson Boxberger and Murphy, Fort Wayne, IN, for Jerome J. Karn, Sally A. Karn.

Robert W. Eherenman, Haller and Colvin, Fort Wayne, IN, Frederick D. Emhardt, Christopher J. Braun, Plews Shadley Racher and Braun, Indianapolis, IN, for Ingersoll Rand.

Carla J. Baird, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN, for Wayne As-

phalt & Construction Co., GRE Insurance Group.

## MEMORANDUM OF DECISION

COSBEY, United States Magistrate Judge.

### I. INTRODUCTION

On September 20, 1996, this Court granted two motions to compel filed by Defendant, Ingersoll–Rand Company ("the Defendant") on September 13, 1996. This memorandum is offered in support of that ruling.

### II. FACTUAL AND PROCEDURAL BACKGROUND

In the first motion to compel, the Defendant sought production of a medical chronology concerning Plaintiff Jerome Karn ("Karn"), whose injuries form the basis of this lawsuit. Prepared by the staff of Plaintiffs' counsel for the Plaintiffs' vocational expert, Mr. Robert Bond ("Bond"), Bond reviewed it before interviewing Karn. *See* Bond Dep. at 40–42. In response, the Plaintiffs assert that the medical chronology is protected as factual (not opinion) work product and that Bond did not rely on it in forming his opinions. While the medical chronology, which the Court has reviewed *in camera*, summarizes Karn's medical history dating back to 1989 (four years before the injury that prompted Karn to sue), Bond asserts that he actually only formed his opinion on the basis of two post-injury medical reports that he reviewed. *Id.* at 40–41.

In the second motion to compel, the Defendant requests a letter dated April 22, 1996, from Plaintiffs' counsel to Plaintiffs' liability expert, Gerald Rennell ("Rennell"), summarizing two depositions ("the letter"). Rennell Dep. at 36–37. The Plaintiffs object, contending that the letter, which the Court has viewed *in camera*, is opinion work product, and that Rennell did not rely on the letter in forming his opinion since he read the depositions in their entirety.

In its joint reply in support of both motions to compel, the Defendant argues that

Fed.R.Civ.P. 26 ("Rule 26")[1] mandates disclosure despite the assertion of work product protection.

## III. DISCUSSION

### A. Whether the Experts "Considered" the Documents in Forming their Opinions

■ In response to each of the motions to compel, the Plaintiffs argue that the experts did not *rely* on the requested documents in forming their opinions. The depositions of each of the experts support this assertion. See Bond Dep. at 40–42; Rennell Dep. at 38. However, the experts do not deny reading the documents nor that they are related to the subject matter of the litigation.

Thus, the question becomes whether the experts' lack of reliance on the documents in forming their opinions entitles the Plaintiffs to refuse disclosure. In 1993, subdivision (a)(2) was added to Rule 26. It provides, in pertinent part:

**(a) Required Disclosures; Methods to Discover Additional Matter.**

. . . .

**(2) Disclosure of Expert Testimony.**

**(A)** . . . a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702 ["Testimony by Experts"], 703 ["Bases of Opinion Testimony by Experts"], or 705 ["Disclosure of Facts or Data Underlying Expert Opinion"] of the Federal Rules of Evidence.

**(B)** Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to [a testifying witness], be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; [and] *the data or other information considered by the witness in forming the opinions* . . . .

**(C)** These disclosures shall be made at the times and in the sequence directed by the court. . . .

*Id.* (emphasis added).

The drafters of the new Rule clearly contemplated that the term "considered" was something different than the term "relied," given that they rejected an earlier draft version of subdivision (a)(2), which required that the expert's report set forth "the data or other information relied upon in forming such opinions." 137 F.R.D. 53, 89 (1991); *see* Michael E. Plunkett, *Discoverability of Attorney Work Product Reviewed by Expert Witnesses: Have the 1993 Revisions to the Federal Rules of Civil Procedure Changed Anything?*, 69 *Temple L.Rev.* 451, 479 (1996). "Considered," which simply means "to take into account," clearly invokes a broader spectrum of thought than the phrase "relied upon," which requires dependence on the information. *See Webster's New Riverside University Dictionary* at 301, 993 (1984). Courts have noticed the difference; in *Baxter Diagnostics, Inc. v. AVL Scientific Corp.,* No. CV 91–4178–RG, 1993 WL 360674 (C.D.Cal., Aug. 6, 1993), the court defined the word "considered" as encompassing not only documents upon which the experts relied in forming their opinions but also those documents reviewed by the experts as well. *Id.* at *1.

In this case, the experts reviewed the documents in connection with forming their opinions. Thus, they "considered" the information, mandating disclosure.

### B. Applicability of the Work Product Doctrine

■ The Plaintiffs' alternative argument, that the documents are protected by the work product doctrine, highlights the tension previously existing between a court's duty to prevent the disclosure of attorney opinion work product on the one hand, and the Rule's mandate for expert disclosure, possibly including that same work product, on the other. The 1993 amendments to the Rule do much to overcome this apparent friction and

1. Throughout this Memorandum, "the new Rule" will refer to Rule 26 after the December 1, 1993 amendments and, correspondingly, the "old Rule" will refer to Rule 26 in its pre-December 1, 1993 state.

lead to the fundamental conclusion that work product protection does not apply to documents provided by counsel to testifying experts related to the subject matter of the litigation. Nonetheless, because this area of the law continues to be plagued by disagreement among both courts and commentators, the Court will undertake to thoroughly explain its reasoning.

### 1. The Law Under Old Rule 26

Understanding the effect of the 1993 amendments requires a review of their historical context. Prior to December 1993, Rule 26 stated, in pertinent part:

> (b) **Discovery Scope and Limits.** Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> (1) **In General.** ... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
>
> ....
>
> (4) **Trial Preparation: Experts.** Discovery of facts known and opinions known by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial may be obtained only as follows:
>
> (A)(*i*) A party may through interrogatories require any other party to identify each person the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, *and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.*

> (*ii*) Upon motion, the court may order further discovery by other means, ....

Rule 26 (1992) (emphasis added). Under that Rule, the courts held widely divergent views as to the discoverability of work product information that had been shared between counsel and a testifying expert.[2] *See generally Intermedics, Inc. v. Ventritex, Inc.,* 139 F.R.D. 384 (N.D.Cal.1991); Lee Mickus, *Discovery of Work Product Disclosed to a Testifying Expert Under the 1993 Amendments to the Federal Rules of Civil Procedure,* 27 Creighton L.Rev. 773, 795–805 (1994); Plunkett, *supra,* at 456–67.

The case of *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 594–95 (3d Cir.1984) (apparently the only case at the circuit level that has ever addressed this issue) stood at one pole, holding that opinion work product is absolutely protected from discovery but that factual work product can be discovered. *Accord, North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.,* 108 F.R.D. 283, 286 (M.D.N.C.1985). At the other end stood *Boring v. Keller,* 97 F.R.D. 404, 407 (D.Colo. 1983) ("[T]he opinion work product rule is no exception to discovery under circumstances where documents which contain mental impressions are examined and reviewed by expert witnesses before their expert opinions are formed."), *followed, In re Air Crash Disaster at Stapleton Int'l Airport,* 720 F.Supp. 1442, 1444 (D.Colo.1988).

A number of courts invoked less drastic analytical standards. For example, the Northern District of Illinois modified the *Boring* view to hold that work product that could have influenced the expert was discoverable, but that opinion work product that "could not have influenced the expert" was not. *SiLite, Inc. v. Creative Bath Prods., Inc.,* No. 91 C 5920, 1993 WL 384562 *1–2 (Sept. 28, 1993) (citing, *inter alia, Mojica v.*

---

**2.** Subdivision (b)(3) of Rule 26 (both before and after 1993) provides, in pertinent part:

**Trial Preparation: Materials.** Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

*Doboy Packaging Mach.,* No. 86 C 4–76, 1987 WL 7813 (Mar. 12, 1987)). Another approach depended on a showing of substantial need and an inability to obtain the equivalent without undue hardship. *Hamel v. General Motors Corp.,* 128 F.R.D. 281, 282–84 (D.Kan.1989); *Bethany Med. Center v. Harder,* No. 85–2415, 1987 WL 47845 *10 (D.Kan., Mar. 12, 1987). Moreover, some courts allowed discovery of all documents upon which the expert relied in forming an opinion. *See, e.g., Occulto v. Adamar of New Jersey, Inc.,* 125 F.R.D. 611, 615 (D.N.J.1989); *cf. Dominguez v. Syntex Lab., Inc.,* 149 F.R.D. 158, 165 (S.D.Ind.1993) (allowing discovery of work product materials that the expert "considered and/or used to evaluate and form his opinions," but providing for the redaction of any opinion work product). Another court relied on Fed.R.Evid. 612 ("Rule 612"), which allows discovery of materials used to refresh a witness's recollection, reasoning that documents that impact on the witness's testimony enough to trigger Rule 612 should be discoverable. *Berkey Photo, Inc. v. Eastman Kodak Co.,* 74 F.R.D. 613, 615 (S.D.N.Y.1977), *followed, James Julian, Inc. v. Raytheon Co.,* 93 F.R.D. 138, 145 (D.Del.1982).

Finally, the Northern District of California, in a very thoughtful opinion, offered a sophisticated balancing test to resolve the tension between subdivisions (b)(3) (the work product doctrine) and (b)(4) (the expert disclosure requirements) of Rule 26. *Intermedics,* 139 F.R.D. 384. The court concluded that the 1970 Advisory Committee, which had originally imposed the expert disclosure requirements, never envisioned the resulting tension between subdivisions (b)(3) and (b)(4) that eventually arose in the next two decades. The court reasoned that the Advisory Committee clearly contemplated "routine disclosure of 'the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion,'" as well as "further discovery" at the court's discretion, *id.* at 389 (quoting Rule 26). However, this entitlement

> suggests that the drafters may have had a more limited vision of the scope of the inquiry that normally would take place into the processes by which experts formed their views than has come to be accepted,

at least in some courts, in the intervening two decades. We must keep in mind the context in which the Committee was working in the late 1960's: many courts had refused to permit any discovery of [experts'] views. While a purpose of the 1970 amendments was to overrule that line of authority, the Committee apparently perceived the new rule as more of a modest step forward than a radical, unchecked venture into a wholly new area.

*Id.* at 389–90 (footnote omitted). This view was confirmed by the observation that the 1970 Advisory Committee Notes never discussed the possible meshing of subdivisions (b)(3) and (b)(4). *See id.* at 390.

The *Intermedics* court, therefore, found it necessary to strike a balance between the interests championed by the work product doctrine and those sought to be advanced through the disclosure of expert testimony. *Id.* at 391–92. The court expressly stated that this "open balancing analysis" was not "pre-weighted in favor of protecting certain interests, as might be appropriate if the rulemakers had considered all the competing interests" and had expressed a preference for just one. *Id.* at 392 n. 7. It thus held that:

> absent an extraordinary showing of unfairness that goes well beyond the interests generally protected by the work product doctrine, written and oral communications from a lawyer to an expert that are related to matters about which the expert will offer testimony are discoverable, even when those communications otherwise would be deemed opinion work product.

*Id.* at 387.

### 2. The 1993 Amendments to Rule 26

Against this historical backdrop, it becomes plainly evident that the text of the new Rule, supported by its accompanying commentary, was designed to mandate full disclosure of those materials reviewed by an expert witness, regardless of whether they constitute opinion work product. Apart from the literal language employed, and as more fully discussed *infra,* this "bright-line" rule also makes sense on several policy grounds.

### a. The text of the new Rule

In December 1993, an amended version of Rule 26 went into effect. In addition to adding subdivision (a)(2)(A)(B), quoted *supra*, it also now provides additional admonitions as follows:

> **(b) Discovery Scope and Limits.** Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> . . . .
>
> **(4) Trial Preparation: Experts.**
>
> (A) A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under subdivision (a)(2)(B), the deposition shall not be conducted until after the report is provided.

Rule 26 (1994). The addition of subdivision (a)(2)'s mandatory disclosure requirements as to expert opinions along with 26(b)(4)(A) were two striking departures from the practice that had grown up around the old Rule. The 1993 Advisory Committee Notes explain:

> The information disclosed under the former rule in answering interrogatories about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness. . . .
>
> The report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. *Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.*

Rule 26(a)(2) advisory committee's note (emphasis added).

---

3. This case will be distinguished, *infra*.

4. Although the *All West* court was ostensibly construing new Rule 26, it chose to expressly follow pre-amendment authority, *Bogosian*, 738 F.2d at

In fact, as one commentator has observed, the disclosing of expert testimony under subdivision (a)(2) is not a form of "discovery" at all, and thus is not subject to subdivision (b)'s work product protection. Plunkett, *supra*, at 476–77.

Even though subdivision (a)(2) and the supporting commentary unambiguously provide a "bright-line" rule, *see* 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2016.2 (1994) ("At least with respect to experts who testify at trial, the disclosure requirements of Rule 26(a)(2), adopted in 1993, were intended to pretermit further discussion and mandate disclosure despite privilege.") (citing 1993 Advisory Committee's Notes), courts have nonetheless inconsistently interpreted it. *See Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, No. CV 91–4178–RG, 1993 WL 360674 (C.D.Cal., Aug. 6, 1993) (citing the amendments to Rule 26 as requiring "automatic disclosure of all information considered by the trial experts" in forming their opinions); *cf., Georgou v. Fritzshall*, No. 93 C 997, 1996 WL 73592 (N.D.Ill., Feb. 15, 1996) (where expert was formerly the defendant's attorney, he was not entitled to assert attorney-client privilege as to documents from the prior related litigation); *Martin v. Intex Recreational Corp.*, Civ. A. No. 91–2200–JWL, 1994 WL 593987 (D.Kan., Oct. 27, 1994) (ordering disclosure of a videotape prepared by the expert as well as items prepared by counsel to which the expert referred in preparing the videotape); *but see Haworth v. Herman Miller, Inc.*, 162 F.R.D. 289, 294–96 (W.D.Mich.1995) (allowing discovery of factual work product but not opinion work product under the new Rule);[3] *All West Pet Supply v. Hill's Pet Products*, 152 F.R.D. 634, 638 (D.C.Kan.1993) (refusing discovery, under new Rule 26, of a letter from counsel to an expert witness that was part of the basis for the expert's opinion).[4] Indeed, one commentator has argued that the tension between the work product doctrine and the requirements of expert disclosure are still with us

---

594. As discussed more fully *infra*, the Court will not follow *Bogosian* in light of the 1993 amendments.

even after the 1993 amendments. *See* Mickus, *supra,* at 777 (citing to Rule 26 and the 1993 Advisory Committee's Notes).

In this Court's view, new Rule 26 and its supporting commentary reveal that the drafters considered the imperfect alignment between 26(b)(3) and 26(b)(4) under the old Rule, and clearly resolved it by providing that the requirements of (a)(2) "trump" any assertion of work product or privilege.[5] Thus, while the *Intermedics* "open balancing analysis" discussed *supra* provides thoughtful and instructive reasoning, the analysis it espouses has become unnecessary in light of the new Rule.[6] *See* 139 F.R.D. at 392 n. 7; *but see Furniture World, Inc. v. D.A.V. Thrift Stores, Inc.,* 168 F.R.D. 61, 62 (D.N.M. 1996) (applying new Rule 26 and following the *Intermedics* balancing analysis); *Federal Deposit Ins. Corp. v. Gonzalez–Gorrondona, Jr.,* No. 91–2791–CIV–HURLEY, 1994 WL 836318 (S.D.Fla., Aug. 11, 1994) (applying the *Intermedics* balancing analysis and presumably applying new Rule 26).

For these reasons, the text of the new Rule itself, combined with its supporting commentary, mandate disclosure of all materials reviewed by an expert witness.

### b.  *Policy grounds support the Court's interpretation*

The "bright-line" interpretation expressed here also makes good sense on several policy grounds: effective cross examination of expert witnesses will be enhanced; the policies underlying the work product doctrine will not be violated; and, finally, litigation certainty will be achieved—counsel will know exactly what documents will be subject to disclosure and can react accordingly.

First, the impact of expert witnesses on modern-day litigation cannot be overstated; yet, to some, they are nothing more than willing musical instruments upon which manipulative counsel can play whatever tune desired. John H. Langbein, *The German Advantage in Civil Procedure,* 52 U.Chi. L.Rev. 823, 835 (1985). This thought leads to the belief that expert testimony has often been subject to improper influences, and that counsel can all too easily color the expert's opinion by simply controlling the expert's access to information. Mickus, *supra,* at 787–91 (citing, *inter alia, Intermedics,* 139 F.R.D. at 393–94, 396). To compound the problem and the risk for abuse, "expert witnesses testify regarding subjects outside the common knowledge of the finder of fact, so the jury cannot rely on the experience and common sense of its members to ferret out distorted evidence." *Id.* at 787–88. Thus, full, effective cross examination is critical to the integrity of the truth-finding process. *See id.* at 787–94. The Court's reading of Rule 26(a) will advance this interest.

Given this premise, it stands to reason that useful cross examination and possible impeachment can only be accomplished by gaining access to all of the information that shaped or potentially influenced the expert witness's opinion. *See Boring,* 97 F.R.D. at 407. However, one court disagrees, taking the view that "[t]he risk of an attorney influencing the expert witness does not go unchecked in the adversarial system, for the reasonableness of an expert opinion can be judged against the knowledge of the expert's

---

**5.**  As one commentator has explained:

[T]he Advisory Committee notes to Rule 26[a](2) indicate that all materials given to an expert should be disclosed. In particular, the Advisory Committee refers to an article discussing ... the unreliability of expert witnesses and the ways attorneys attempt to thwart the discovery of expert witnesses. To combat these problems, the author of the article advocates expanded discovery regarding expert witnesses. The Advisory Committee's reference to this article in its comments to Rule 26(a)(2) unambiguously signals that the drafters of the Rule were attempting to enhance the reliability of expert testimony through expanded discovery.

Plunkett, *supra,* at 478 (citing Michael H. Graham, *Expert Witness Testimony and the Federal Rules of Evidence: Insuring Adequate Assurance of Trustworthiness,* 1986 U.Ill.L.Rev. 43, 43–46, 90).

**6.**  The one case cited by Plaintiffs, *Rail Intermodal Specialists, Inc. v. General Elec. Capital Corp.,* 154 F.R.D. 218 (N.D.Iowa 1994), is materially distinguishable from the case here in that it relies on the outdated *Intermedics* "open balancing analysis" and seemingly applies the old Rule, *see id.* at 221 (referring to the Notes of Advisory Committee, 1970 Amendment).

field and is always subject to the scrutiny of other experts." *Haworth, Inc.,* 162 F.R.D. at 295–96 (construing new Rule 26); *see Bogosian,* 738 F.2d at 595 (construing the old Rule) (disclosure that an expert's opinion has been biased by counsel's influence has only "marginal value"). The *Haworth* view, however, does not place sufficient emphasis upon the critical need for full and effective cross-examination of expert witnesses—a vitally important task in the usual, and increasingly frequent, "battle of the experts."

Without pre-trial access to attorney-expert communications, opposing counsel may not be able to effectively reveal the influence that counsel has achieved over the expert's testimony. *Boring,* 97 F.R.D. at 408; *accord, Air Crash Disaster,* 720 F.Supp. at 1444 (stating that because an expert usually learns the factual context of the case from counsel, effective impeachment requires that opposing counsel have access to all material reviewed by the expert in forming her opinion); Wright, Miller & Marcus, *supra,* § 2029 n. 16. "Admittedly, a strong attack on the merits of an expert's conclusions by itself substantially undermines the credibility of the expert. However, the additional showing that counsel manipulated the expert's analysis and ultimate findings pushes the expert's testimony from the realm of sloppy science into that of biased science." Mickus, *supra,* at 808 n. 89.[7] After all, "[t]he trier of fact has a right to know who is testifying." *Intermedics,* 139 F.R.D. at 396. A juror has a right to rely on an expert's report or testimony for what it purports to be—"the expert's considered analysis of facts and statement of .opinions applying the expert's special education, training and experience." *Id.* (quoting *Occulto,* 125 F.R.D. 611). The Court's ruling today will do much to justify that reliance.

Second, the Court's ruling does not violate the core precepts of the work product doctrine, which, at bottom, is intended to allow counsel unfettered latitude to develop new legal theories or to conduct a factual investigation, but without knowing beforehand if the results will be favorable to the client's case. *See generally* Mickus, *supra,* at 780–87 (citing, *inter alia, Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947)). It preserves the

> incentive system that is perceived as essential to our adjudicatory process and [creates] an environment in which counsel are free to think dispassionately, reliably, and creatively both about the law and the evidence in the case and about which strategic approaches to the litigation are likely to be in their client's best interests.

*Intermedics,* 139 F.R.D. at 392; *see Upjohn Co. v. United States,* 449 U.S. 383, 402, 101 S.Ct. 677, 689, 66 L.Ed.2d 584 (1981). However, providing work product to an expert witness does not further this policy in that it generally does not result in counsel developing new legal theories or in enhancing the conducting of a factual investigation. Rather, the work product either informs the expert as to what counsel believes are relevant facts, or seeks to influence him to render a favorable opinion. Mickus, *supra,* at 785. Thus, requiring disclosure of an attorney's communications to the expert does not impinge on the goals served by the opinion work product doctrine.

Although it could be argued that counsel can sidestep forced disclosure of opinion work product and still improperly influence experts via oral communications (although the *Intermedics* court concluded that even oral communications are discoverable, 139 F.R.D. at 387), even this comes with a cost: "holding lengthy discussions with the expert would consume the time of both counsel and the expert, making the process much less efficient." Mickus, *supra,* at 807. Another possible criticism of the Court's ruling is that counsel will now be prevented from having uninhibited, freewheeling interchanges with their expert witnesses. However, counsel can still freely engage in such interchanges with their nontestifying experts, *see* Rule 26(b)(4)(B).

---

7. Given that "[a]t least since the age of the enlightenment, many people in our society have tended to equate 'science' with 'objective truth,' " *Intermedics,* 139 F.R.D. at 396, revealing that expert testimony is actually only "biased science" could irrevocably doom an expert's credibility.

Finally, the "bright-line" view actually preserves opinion work product protection in that there is no lingering uncertainty as to what documents will be disclosed. Counsel can easily protect genuine work product by simply not divulging it to the expert. *See* Plunkett, *supra*, at 483.

Thus, policy considerations also support adoption of the "bright-line" rule intended by the Rule's drafters.

## IV. CONCLUSION

Based on the foregoing analysis, the Court has ordered disclosure of the two disputed documents in this case.