John KRISA, Plaintiff,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY, Defendant.

No. 97–CV–1825.

United States District Court,
M.D. Pennsylvania.

May 31, 2000.

Alan M. Feldman, Feldman, Shepherd, Wohlgelernter & Herman, Philadelphia, PA, for John Krisa.

Andrew F. Susko, White and Williams, Platte B. Moring, III, Allentown, PA, for Equitable Life Assurance Society.

## MEMORANDUM

VANASKIE, Chief Judge.

Presently at issue in the above-captioned matter is plaintiff John Krisa's demand that defendant Equitable Life Assurance Society ("Equitable") produce drafts of reports prepared by Equitable's expert witnesses and other documents for which Equitable claims protection under the work product doctrine, as well as correspondence between Equitable's counsel and its expert witnesses, for which Equitable does not claim the protection of the work product doctrine but which Equitable claims is outside the scope of permissible discovery. Essentially, three questions are presented for resolution in this discovery dispute:

First, are draft reports prepared by an expert witness designated to testify at trial covered by the work product doctrine?

Second, does the requirement to disclose "the data or other information considered by [an expert] witness in forming [his or her] opinions," set forth in Rule 26(a)(2) of the Federal Rules of Civil Procedure, overcome

the protection against discovery of an attorney's mental impressions, conclusions, opinions or legal theories afforded by Rule 26(b)(3) when such "core work product" has been disclosed to an expert witness?

And third, are letters that transmit documents from counsel to an expert witness ("cover" or "transmittal" letters) subject to discovery?

Having carefully considered the questions in the light of the applicable Federal Rules of Civil Procedure and pertinent case law, I find that draft reports and other documents prepared by expert witnesses are not covered by the work product protection and that transmittal letters are subject to discovery. I also find, however, that the disclosure requirements of Rule 26(a)(2) do not overcome the protection accorded counsel's mental impressions, conclusions, opinions and legal theories when such core work product is disclosed to an expert witness. Accordingly, Equitable will be required to produce all documents it has withheld with the exception of two documents that contain core work product.

## I. BACKGROUND

This case concerns Equitable's decision to deny Krisa's application for disability benefits under insurance policies issued to Krisa by Equitable. Krisa, an attorney, contends that he is entitled to benefits because labile hypertension renders him unable to pursue his chosen avocation of a litigation lawyer. A summary of the factual background of this case is set forth in this Court's Memorandum dated April 6, 2000. (Dkt. Entry 138.)

On March 10, 1999, Krisa wrote to this Court, requesting that Equitable be ordered to produce documents generated by or provided to Equitable's experts. (Dkt. Entry 89.) The documents in question fell within the scope of subpoenas duces tecum that Krisa had served in connection with depositions of Equitable's expert witnesses noticed pursuant to Fed.R.Civ.P. 26(b)(4). On March 23, 1999, Krisa supplemented his March 10th request to include another Equitable expert witness. (Dkt. Entry 95.) By

letter dated April 20, 1999, Equitable responded to Krisa's request to compel production of the contested documents, contending that "the documents sought are outside the scope of permissible discovery of expert witnesses and covered by the work product privilege." (Dkt. Entry 99.) At oral argument held Friday, April 30, 1999, and via an Order issued that same date, Equitable was directed to produce the documents for *in camera* review.

By letter dated May 10, 1999, Equitable forwarded to the Court the documents withheld from discovery. The documents included draft reports as well as other documents prepared in connection with this litigation by three expert witnesses—Maxwell Davison, Esq., Wayne Geisser, and Richard Blum, M.D., as well as communications between them and Equitable's counsel. Equitable claims the work product protection as to all of Mr. Davison's documents, which consist of Davison's handwritten notes of a telephone conversation with Equitable's counsel, three separate drafts of his "Opinion Letter" in this matter, and his file memorandum summarizing Mr. Krisa's deposition.[1] As to Mr. Geisser, a forensic accounting expert, Equitable has declined to produce 41 separately numbered documents listed on a privilege log. It claims the work product privilege only as to documents 1 through 3, 23, 28 through 33, 35, 37, 39 and 40. The remainder of the documents are "cover" or "transmittal" letters sent from Equitable's counsel to Mr. Geisser. While not asserting the work product protection as to those letters, Equitable argues that they are outside the scope of discovery permitted by Fed.R.Civ.P. 26(a)(2)(B). As to the Geisser documents for which Equitable claims the work product protection, some are drafts of Mr. Geisser's report or sections thereof or appendices thereto (e.g., documents 1 through 3); some are analyses prepared by Mr. Geisser (i.e., documents 23, 28, 29, 31, 32, 35, and 37); two documents reflect communications from Mr. Geisser to Equitable's counsel concerning inquiries to be made in discovery and discovery

---

1. Equitable did produce to Krisa Davison's file memorandum, but redacted one sentence, for which Equitable claims work product protection.

issues (documents 30 and 33), and the remaining three documents (Nos. 39 and 40) are communications from Equitable's counsel to Mr. Geisser. As to Dr. Blum, Equitable has withheld from production 18 separately numbered documents. It does not claim the work product privilege as to any of those documents, but contends, instead, that the documents are all transmittal letters that are outside the scope of discovery permitted by Rule 26(a)(2)(B). (*See* May 10, 1999 letter from Equitable's counsel transmitting documents for *in camera* review.)

## II. DISCUSSION

### A. The Production of Draft Expert Reports and Written Analyses Prepared by Testifying Experts

■ Krisa seeks production of preliminary reports and other documents created by Equitable's experts in connection with this litigation. Equitable responds that it need not produce the draft reports and written analyses generated by its experts because such documents are protected by the work product doctrine codified in Rule 26(b)(3), which, in pertinent part, provides:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Emphasizing that the work product protection extends not only to documents prepared in anticipation of trial by a party's attorney, but also to a party's consultant or agent, Equitable insists that draft reports are protected work product material.

Equitable's argument disregards the fact that the protection afforded by Rule 26(b)(3) is subject to Rule 26(b)(4), which generally authorizes discovery of testifying expert witnesses. Specifically, Rule 26(b)(4) authorizes the depositions of any person who has been identified as experts "whose opinions may be presented at trial." The Advisory Committee Notes to the 1970 amendments that added subdivision (b)(4) authorizing discovery of expert witnesses explained that:

> These new provisions of subdivision (b)(4) repudiate the few decisions that have held an expert's information privileged simply because of his status as an expert. *They also reject as ill-considered the decisions which have sought to bring expert information within the work product doctrine.* [Emphasis added.]

Thus, both the structure of Rule 26 and the Advisory Committee Notes that accompanied the authorization of expert witness discovery in 1970 suggest the conclusion that documents prepared by expert witnesses are not within the ambit of the work product doctrine.

Buttressing the conclusion that documents generated by a testifying expert witness are not covered by the work product privilege is the treatment accorded facts known or opinions held by an expert who is not expected to be called as a witness at trial. Rule 26(b)(4)(B) provides that facts known or opinions held by such an expert witness may be discovered only "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." No such limitation is expressed with respect to the tentative or preliminary opinions of a testifying expert witness. By shielding the opinions of non-testifying experts retained in anticipation of trial while mandating broad discovery of testifying experts, the Rules plainly contemplate discovery of not only the opinions the testifying experts intend to advance at trial,

but also preliminary or tentative opinions expressed by the testifying experts that may be in conflict with their final opinions. Clearly, Equitable would not argue that a conflicting opinion expressed in a different case by the expert is immune from discovery. No sound basis exists for shielding a contrary opinion of the expert expressed in the matter *sub judice.*

Consistent with this analysis, a number of courts have held that draft reports of testifying expert witnesses are discoverable. *See e.g., Ladd Furniture, Inc. v. Ernst & Young,* No. 2:95–CV–00403, 1998 WL 1093901, at *11 (M.D.N.C., Aug.27, 1998); *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co.,* 171 F.R.D. 57, 62 (S.D.N.Y.1997); *Hewlett–Packard Co. v. Bausch & Lomb, Inc.,* 116 F.R.D. 533, 536–37 (N.D.Cal.1987). As succinctly stated in *County of Suffolk v. Long Island Lighting Co.,* 122 F.R.D. 120, 122 (E.D.N.Y. 1988):

> In general, the work-product privilege has been held not to apply to opinions and documents generated or consulted by an expert retained to testify at trial.

> Rule 26(b)(4) of the Federal Rules of Civil Procedure governs "discovery of facts known and opinions held by experts ... acquired or developed in anticipation of litigation or for trial." Fed.R.Civ.P. 26(b)(4).[2] This rule has been broadly interpreted to authorize disclosure of both expert opinions and 'all the documents the expert generated or examined in the process of forming those opinions.' Similarly, courts have defined the scope of the rule to allow 'disclosure of drafts of reports or

memoranda experts have generated as they develop the opinions they will present at trial.'

The conclusion that the draft reports and other documents prepared by Equitable's witnesses in this case are not covered by the work product privilege is consistent with the policy considerations underlying the privilege. The work product privilege is based upon "the general policy against invading the privacy of an attorney's course of preparation." *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 592 (3d Cir.1984) (*citing Hickman v. Taylor,* 329 U.S. 495, 512, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). An attorney's work product includes "interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs...." *Id.* (*quoting Hickman,* 329 U.S. at 511, 67 S.Ct. 385). In the instant case, Equitable asserts that "[c]ounsel for defendant did not write any portion of the final report," and that "[c]ounsel for defendant did not make specific suggestions with respect to the content of the report and did not request that the report be prepared in such a way to bring about a predetermined outcome." (Equitable Letter of April 20, 1999 (Dkt. Entry 99) at 7.) Equitable's representations indicate that counsel's mental processes and opinions are not contained in the experts' draft reports. Thus, requesting production of these documents will not invade the privacy to be accorded Equitable's trial counsel in developing litigation theories and strategies.[3] Moreover, Krisa could be deprived of a information that would be material to effective cross-

---

**2.** Although Rule 26(b)(4) was amended in 1993 to provide simply that a party may depose a testifying expert witness, the scope of that form of discovery plainly extends to facts known and opinions held by the expert acquired or developed in anticipation of litigation or for trial. As explained in *B.C.F. Oil Refining:*

> The 1970 Amendment allowed a party to serve interrogatories requiring an adverse party to identify experts and "state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Fed.R.Civ.P. 26(b)(4) (1992) (amended 1993). Rule 26 was amended in 1993 so that all of this information is now required to be disclosed by the expert himself in a report. Fed.R.Civ.P. 26(a)(2),

> (b)(4). Thus, while the 1970 Rule has been amended, the principle that documents generated by an expert are not work product remains in full force.

171 F.R.D. at 62 n. 4 (emphasis added).

**3.** Equitable's reliance upon *Bogosian* is misplaced. *Bogosian* held that "core work product"—documents prepared by attorneys that contain their mental impressions and thought processes—are not subject to discovery simply because they have been disclosed to a testifying expert witness. There is no contention in this case that the draft expert witnesses reports reflect such "core work product." Accordingly, *Bogosian* is not applicable to the question of whether the draft expert reports at issue in this case are discoverable.

examination of Equitable's experts if deprived of the expression of the evolution of the experts' opinions. Accordingly, Equitable will be required to produce the draft expert reports and other documents prepared by the experts it intends to present at trial.[4]

### B. Communications From Equitable's Counsel to Testifying Expert Witnesses

There has been a significant split among courts that have addressed whether core attorney work product shared with a party's expert is discoverable. *B.C.F. Oil Refining Inc.*, 171 F.R.D. at 64. Our Court of Appeals addressed this issue in *Bogosian*, 738 F.2d at 595, and held that core work product generated by an attorney was shielded from discovery even if disclosed to an expert. *Bogosian*, relying on the Supreme Court's rationale for constructing the work product privilege in *Hickman* and *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), concluded that documents containing an attorney's "mental impressions, opinions or conclusions" should be protected. *Id.* Our Court of Appeals, citing *Upjohn*, noted that "[t]he particular protection to be accorded such work product, denominated 'opinion work product,' was reiterated in *Upjohn Co.* Justice Rehnquist, writing for a unanimous Court, stressed the 'special protection to work product revealing the attorney's mental processes.' *Id.* at 400, 101 S.Ct. 677." *Bogosian*, 738 F.2d at 593.

In 1993, Federal Rule of Civil Procedure 26(b) was amended so as to eliminate the need for "interrogatories to determine the substance of an expert's testimony." *B.C.F. Oil Refining Inc.*, 171 F.R.D. at 65. "Instead, under Rule 26(a)(2), an expert must file a report which contains ... 'a complete statement of all opinions to be expressed and the basis and reasons therefor; [and] the data or other information *considered* by the witness in forming the opinions....'" *Id.* (*quoting* Fed.R.Civ.P. 26(a)(2) (emphasis added)). Importantly, the Advisory Committee Notes to the 1993 Amendment explain that:

> This paragraph [subsection (a)(2) of Rule 26] imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial so that opposing parties have a reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses.... The information disclosed under the former rule in answering interrogatories about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for the deposition of the witness.... The [expert] report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. *Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.* [Emphasis added.]

Although courts have noted that "the reasoning of those cases interpreting the Rule prior to 1993 on this subject is probably obsolete," they have remained divided on whether attorney work product is discoverable when given to an expert. *B.C.F. Oil Refining Inc.*, 171 F.R.D. at 65. Even courts that have relied on the 1993 amendments to hold that attorney work product is discoverable when disclosed to an expert have noted "that the tension between the work product doctrine and the requirements of expert disclosure are still with us even after the 1993 amendments." *Karn v. Ingersoll–Rand Co.*, 168 F.R.D. 633, 639–40 (N.D.Ind.1996).

Several courts have held that the 1993 Amendments to Rule 26(a)(2) were "designed to mandate full disclosure of those materials reviewed by an expert witness, regardless of

---

4. Specifically, Equitable will be required to produce documents described at paragraphs numbered 1 through 3, 23, 28–33, and 35 in the Geisser privilege log, and documents numbered 2 through 5 described in the Davison privilege log, including the unredacted memorandum prepared by Mr. Davison in connection with his review of Mr. Krisa's deposition.

whether they constitute opinion work product." *Karn,* 168 F.R.D. 633, 637; *Accord B.C.F. Oil Refining Inc.,* 171 F.R.D. at 65; *Musselman v. Phillips,* 176 F.R.D. 194 (D.Md.1997). Those cases that held that attorney work product was discoverable when disclosed to an expert have generally agreed with the *Karn* court's conclusion that:

> [N]ew Rule 26 and its supporting commentary reveal that the drafters considered the imperfect alignment between 26(b)(3) and 26(b)(4) under the old Rule, and clearly resolved it by providing that the requirements of (a)(2) "trump" any assertion of work product or privilege.

*Karn,* 168 F.R.D. at 639. Those courts that have favored the disclosure of attorney work product argue that their "bright-line" interpretation "makes good sense on several policy grounds: effective cross examination of expert witnesses will be enhanced; the policies underlying the work product doctrine will not be violated; and, finally, litigation certainty will be achieved—counsel will know exactly what documents will be subject to disclosure and can react accordingly." *Karn,* 168 F.R.D. at 639.

However, other courts have rejected the reasoning of *Karn, B.C.F. Oil Refining* and *Musselman* based upon their finding that "nothing in any version of subdivisions (b)(3) and (b)(4), or the committee notes . . . suggests core attorney work product was discoverable under subdivision (b)(4)." *Haworth, Inc. v. Herman Miller, Inc.,* 162 F.R.D. 289, 294 (W.D.Mich.1995). In *Haworth,* the court stated that, "for the high privilege accorded attorney opinion work product not to apply would require clear and unambiguous language. . . ." *Id.* at 295. Relying upon *Bogosian* and other cases, *Haworth* held that "[b]ecause there was no standard for core work product in subdivision (b)(4) that was different from the one in subdivision (b)(3), . . . the protection accorded an attorney's mental impressions and opinions by the Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, and substantially codified in 1970 in Rule 26(b)(3), was intended to apply to discovery from experts."

As noted above, *Bogosian,* decided prior to the 1993 Amendments, held that Rule 26(b)(3)'s protection of core attorney work product is not trumped by 26(b)(4). *Bogosian,* 738 F.2d at 594. The Third Circuit has liberally construed the protections afforded counsel's mental impressions and strategies. *Id.* at 587; *Sporck v. Peil,* 759 F.2d 312 (3d Cir.1985), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985); *Rhone–Poulenc Rorer Inc. v. Home Indemnity Co.,* 32 F.3d 851 (3d Cir.1994). In *Ladd Furniture,* the court was "persuaded that it should follow the line of cases in which other courts have found opinion work product to be protected even when it was considered by an expert in forming his opinion." 1998 WL 1093901 *13.

■ The policy reasons supporting the "bright-line" rule in favor of disclosure of materials disclosed to an expert are not compelling and ignore the policy considerations that compel protection of core work product. One court that held in favor of discovery of documents disclosed to an expert noted that "if an attorney must consult with an expert in order to formulate theories of the case or understand evidence, that attorney can consult freely with a non-testifying expert, thereby protecting any opinion from discovery." *Barna v. United States of America,* No. 95–CV–6552, 1997 WL 417847 at *3 (M.D.Ill., July 23, 1997). This approach ignores the economic burdens retaining an extra expert would place on many litigants. Such an approach would necessarily disadvantage litigants without the resources to retain testifying and non-testifying experts.

The policy reason apparently given the most weight by courts in favor of the "bright-line" rule for production of materials disclosed to an expert is that an expert cannot be properly impeached without knowledge of all the relevant materials that shaped that expert's opinion. *E.g., Karn,* 168 F.R.D. at 639. In *Bogosian,* however, our Court of Appeals noted that "the marginal value on cross-examination that the expert's view may have originated with an attorney's opinion or theory does not warrant overriding the strong policy against disclosure of documents consisting of core attorney's work product." 738 F.2d at 595. The Third Circuit recognized that even where an expert's opinion originated with the attorney, the most effec-

tive way to discredit an opposing expert is the presentation of one's own credible expert. "The risk of an attorney influencing an expert witness does not go unchecked in the adversarial system, for the reasonableness of an expert opinion can be judged against the knowledge of the expert's field and is always subject to the scrutiny of other experts." *Haworth*, 162 F.R.D. at 295–296. Because the law requires expert testimony where the subject matter is outside the common knowledge of the finder of fact, the most effective and dependable manner of discrediting an opponent's expert is the presentation of a credible expert who can dispute, based upon authorities in that expert's field, the conclusions of the other party's expert.

Adopting a "bright-line" rule in favor of mandating production of attorney work product, while increasing the potential for a party to effectively cross-examine an opponent's expert, abridges the attorney work product privilege without specific authority to do so. In *Hickman*, the Supreme Court explained the rationale for the work product privilege as follows:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

*Hickman*, 329 U.S. at 510–11, 67 S.Ct. 385. An interpretation of Rule 26 that holds that a party must produce documents containing work product that are disclosed to its expert ignores the language of Fed.R.Civ.P. 26(b)(3), which requires the production of documents containing work product only when the requesting party shows necessity and undue hardship to obtain the substantial equivalent of such documents by other means. An interpretation of Rule 26 that mandates the production of core work product disclosed to an expert would render the language in Rule 26(b)(3) superfluous. It is a canon of construction that "statutes should be read so far as possible to give independent effect to all their provisions." *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 724, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995). Consistent with this principle and the analysis of the issue set forth in *Bogosian*, I find that disclosure of core work product to a testifying expert does not abrogate the protection accorded such information. Accordingly, the documents embodying communications between counsel and Equitable's expert witnesses have been reviewed to ascertain whether they contain core attorney work product.

Of the Geisser documents claimed by Equitable to be protected by the work-product privilege, only three are communications from Equitable's counsel to the consultant. These documents are numbered 37, 39 and 40 on the Geisser privilege log. Number 37 is a December 14, 1998 facsimile transmission to Mr. Geisser of Mr. Geisser's analysis of Krisa law firm records. This document does not appear to contain core work product, and consequently must be produced. Document 39 is a facsimile transmission dated December 22, 1998 of notes entitled "Reconciliation of Tally Sheets with Collateral Evidence." This document does appear to constitute core work product material, and Equitable will not be required to produce it. Document 40 is a telefax transmission from Equitable's counsel to Mr. Geisser of Mr. Davison's report of January 5, 1999. The report contains some handwritten notes. No attribution for the notes has been claimed by counsel for Equitable. Accordingly, Equitable will be required to produce document number 40.

Only document numbered 1 on the Davison privilege log, Mr. Davison's handwritten notes of a telephone conversation with Equitable's counsel, reflects a communication between Equitable's lawyer and Mr. Davison that encompasses counsel's mental impressions. Equitable will not be required to produce this document.

### C. Letters From Equitable's Counsel Transmitting Documents to Expert Witnesses

█ Krisa seeks production of cover letters sent from Equitable's attorney to its experts. Equitable does not contend that such documents are covered by the work product privilege. Instead, Equitable maintains that, because the transmittal letters were not "considered" by the expert witnesses in forming their opinions, the cover letters are outside the scope of discovery authorized by Rule 26(a)(2)(B).

While it may be that the mandatory disclosure requirements of Rule 26(a)(2)(B) do not extend to letters from counsel to an expert that merely identify the documents enclosed with the letter, Krisa is not seeking to compel compliance with Rule 26(a)(2). Instead, he is contending that he is entitled to subpoena the cover letters in connection with his deposition of Equitable's expert witness. The pertinent question, therefore, is not whether Equitable was obligated by Rule 26(a)(2) to produce voluntarily the letters in question, but whether the letters in question fall within the broad ambit of discovery afforded by Rule 26(b)(1). This rule authorizes discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party...." Fed. R.Civ.P. 26(b)(1). The transmittal letters in question tend to establish the identification of documents that were made available to Equitable's experts. The fact that an expert witnesses was presented with a certain document but did not consider it may be highly relevant in testing the expert's conclusions. Because Equitable does not claim any privilege with respect to the transmittal letters, and they fall within the permissible limits of discovery, Equitable will be ordered to produce them.[5]

### III. CONCLUSION

Relevant precedent holds that materials prepared by a party's expert are not covered by the attorney work product privilege. Because the conclusion that draft expert reports and other documents prepared by testifying expert witnesses are discoverable is consistent with the policy considerations underlying the attorney work product privilege, Equitable will be required to produce the draft reports and other documents prepared by its experts. Cover letters that do not contain the mental impressions, opinions or conclusions of Equitable's counsel are not covered by the attorney work-product doctrine. Because the cover letters are relevant to an evaluation of what documents were considered by Equitable's experts, Equitable will be required to produce them.

Only one document sent by Equitable's counsel to an expert contains attorney work product, and only one document prepared by an expert witness (Mr. Davison) embodies core work product. In light of the Third Circuit's strong protection of core work product expressed *Bogosian* as well as precedent indicating that the 1993 Amendments did not abrogate the attorney work product privilege, Equitable will not be compelled to produce those documents. An appropriate order follows.

---

**5.** Specifically, Equitable will be required to produce documents 4 through 22, 24 through 37, 34, 36, 38 and 41 on the Geisser privilege log and all documents on the Dr. Blum privilege log.