COUNTY OF SUFFOLK, Plaintiff,

v.

LONG ISLAND LIGHTING COMPANY, Stone & Webster Engineering Company, Charges R. Pierce, Wilfred O. Uhl, Charles Davis, and Andrew W. Wofford, Defendants.

No. CV–87–0646 (JBW).

United States District Court, E.D. New York.

Sept. 22, 1988.

Hill, Betts & Nash by Bernard Persky, Kenneth McCallion, New York City, for plaintiff.

LILCO, Law Dept., by Susan Silverman, Hicksville, N.Y., for defendant LILCO.

Mudge Rose Guthrie Alexander & Ferdon by Laurence Senn, New York City, for defendant Stone & Webster.

Shea & Gould by Michael Lesch, John Nicolich, New York City, for individual defendants.

## MEMORANDUM AND ORDER

CAROL BAGLEY AMON, United States Magistrate.

### INTRODUCTION

By letter dated September 7, 1988, the LILCO defendants, joined by the defendant

Stone & Webster Engineering Company, requested an order pursuant to Rule 26(b)(4)(A)(i) of the Federal Rules of Civil Procedure compelling plaintiff to produce memoranda authored by plaintiff's proposed expert Gregory Palast and directed to counsel for plaintiff. Defendants also requested that Palast respond to questions concerning his conversations with Messrs. Dick, Daly, Blau and Ms. Pool; identify the percentage of his professional income in the last three years attributed to fees received from Suffolk County; and produce his diaries, calendars and notebooks.

Plaintiff, County of Suffolk, by letter dated September 8, 1988 opposed this application. Plaintiff contends that Fed.R.Civ. P. 26(b)(3), the work-product privilege, protects the memoranda from disclosure. Plaintiff maintains in response to defendants' additional requests that the court should not compel Palast to testify as to conversations with Messrs. Dick, Daly, Blau and Ms. Pool as they do "not form the basis of his expert opinion" and should not require the production of further testimony or documentation as to Palast's payments from Suffolk County since he has "already answered this information to the best of his ability". Plaintiff further requests protection of Palast's diaries, calendars and notebooks as this request seeks information outside the proper scope of expert discovery.

In response to these applications, I directed plaintiff to produce by September 21, 1988 "those documents [which] contain prior expressions of [Palast's] opinion" relating to his expected testimony. I also directed that plaintiff produce for *in camera* inspection the memoranda withheld. To facilitate the review, I requested plaintiff to accompany the memoranda with a statement explaining how each non-disclosed document constitutes work product. (9/14/88 Transcript at 47).

Pursuant to my direction, plaintiff produced fifty-one memoranda/letters for *in*

*camera* review. Of those submitted, plaintiff produced to the defendants seven complete and six redacted documents. (*See,* Attached List I). Thirty-eight documents were withheld. (*See,* Attached List II). The documents, with three exceptions, are memoranda to Hill, Betts & Nash from Palast over the time period May 6, 1986 to July 22, 1988.[1]

For the reasons set forth herein, defendants' motions to compel are granted in part and denied in part.

## BACKGROUND

Plaintiff's expert witness, Gregory Palast, is a senior associate with Union Associates ("UA"), a consulting firm in New York City and Chicago. Palast and UA "were retained in the first quarter of 1986 by Suffolk County to assist Hill, Betts & Nash in conducting an investigation and determining if there [existed] a basis for a RICO claim" against LILCO (9/12/88 Transcript at 28). Plaintiff asserts that it retained Palast and his organization originally in anticipation of litigation and engaged him until June of 1988 "solely in trial preparation activity." *Id.* Plaintiff describes Palast's role for those two years as an "investigation and trial preparation assistant functioning as a consultant to counsel in formulating the claim." *Id.* In June of 1988, plaintiff designated Palast as an expert. Palast produced the subject memoranda throughout his association with plaintiff, including the month after his designation as an expert.

Plaintiff identifies the subject matter of Palast's intended trial testimony in its Rule 26 Statement of August 5, 1988. Further Palast, in a 62-page affidavit, sets forth an analysis of the rate case and description of his expected testimony. (Affidavit in Opposition to Defendants' Motion to Dismiss dated 9/18/87)

According to the plaintiff, Palast will testify as to (1) the interrelationships between

---

1. Among the documents provided were two letters dated August 6 and 7, 1987 (List II—Nos. 29 & 30) and a memorandum dated May 1, 1987 (List II—No. 19). As to documents 29 and 30, plaintiff failed to make a showing that in the

first instance the work-product privilege is implicated. I direct production of document 19 for the reasons set forth in the body of the memoranda.

LILCO's financial deterioration and its need to obtain rate increases; (2) the history of Public Service Commission proceedings wherein LILCO's testimony and public documents are contradicted by the internal memoranda and other documents prepared by LILCO and Stone & Webster Engineering Company; (3) the materiality of the defendants' undisclosed internal documents and false testimony concerning Shoreham's costs and completion dates to the decisions of the Public Service Commission's awarding the extraordinary rate surcharges referred to in the Amended Complaint; (4) plaintiff's calculation of damages; and (5) plaintiff's inability to discover the frauds alleged in the Amended Complaint because defendants' failed to disclose the relevant documents, and witnesses were not known to plaintiffs, until the RICO investigation resulting in this lawsuit was conducted (*See* Plaintiff's 8/5/88 Rule 26 statement at 2–3; Plaintiff's 9/15/88 Opposition to Defendants' *In Limine* motion at 11))[2]

### DISCUSSION

#### A. The Fifty–One Memoranda

Plaintiff, in its opposition letter of September 8, 1988, argues that the memoranda are documents "prepared in anticipation of litigation" by Palast within his capacity as a trial consultant or investigator and that they represent "conclusions, opinions or legal theories of ... [a] representative of a party concerning the litigation." Fed.R. Civ.P. 26(b)(3). Plaintiff also asserts that production of the Rule 26 statement, the Rule 26 supplement, the 62–page affidavit and the three-day deposition of Palast represent sufficient disclosure of expert information and the court should exercise its discretion to preclude any further discovery.

Defendants, in their letter motion to compel production, challenge the sufficiency of the Rule 26 statements and Palast's affidavit and claim that Palast was unresponsive in three days of deposition. They similarly

dispute that the memoranda constitute work product. They assert instead, that the discoverability of "documents generated or consulted by experts retained in connection with litigation" is governed by expert discovery principles and not the work-product doctrine. *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533, 536 (N.D.Cal.1987); *See also American Steel Products Corp. v. Penn Central Corp.*, 110 F.R.D. 151, 153 (S.D.N.Y.1986).

In general, the work-product privilege has been held not to apply to opinions and documents generated or consulted by an expert retained to testify at trial. *Beverage Marketing Corp. v. Ogilvy & Mather*, 563 F.Supp. 1013, 1014 (S.D.N.Y.1983); *Quadrini v. Sikorsky Aircraft Div., United Aircraft Corp.*, 74 F.R.D. 594, 595 (D.Conn.1977); *accord American Steel Products Corp. v. Penn Central Corp.*, 110 F.R.D. 151, 153 (S.D.N.Y.1986); *Carter–Wallace, Inc. v. Hartz Mountain Industries*, 553 F.Supp. 45, 52 (S.D.N.Y.1982) (discovery of expert reports governed by Fed.R.Civ.P. 26(b)(4)(A)).

Rule 26(b)(4) of the Federal Rules of Civil Procedure governs "discovery of facts known and opinions held by experts ... acquired or developed in anticipation of litigation or for trial." Fed.R.Civ.P. 26(b)(4). This rule has been broadly interpreted to authorize disclosure of both expert opinions and "all the documents the expert generated or examined in the process of forming those opinions." *Hewlett–Packard*, 116 F.R.D. at 536. Similarly, courts have defined the scope of the rule to allow "disclosure of drafts of reports or memoranda experts have generated as they develop the opinions they will present at trial" *Id.; see also Quadrini*, 74 F.R.D. at 595.

Relying on this authority, I ordered the production of any memoranda reflecting Palast's opinions on matters about which he intended to testify at trial and stated that plaintiff was not required to turn over documents which reflected counsel's opin-

---

**2.** It is my understanding that on September 19, 1988, the Honorable Jack B. Weinstein granted, in part, defendants' motion *in limine* for the exclusion of testimony to the extent that the

court will preclude Palast from testifying as to material propositions or legal conclusions and employing words such as "lie" or "fraud" in his analysis.

ions, legal conclusions or strategy. (9/14/88 Transcript at 49).

The majority of the memoranda produced discuss the allegations against LILCO and Stone & Webster, detail the factual support for the allegations, in particular the claims that LILCO knowingly made false statements to the Public Service Commission and other governmental entities pertaining to Shoreham, and discuss and analyze the history of the proceedings in light of the false statements. Also included among the documents is discussion by Palast of the facts supporting the plaintiff's position that acts of fraud and concealment could not have been known before the commencement of the RICO investigation (*see, e.g.,* List II No. 28). Interspersed throughout several of the documents are Palast's suggestions as to avenues to pursue in connection with the investigation including a listing of documents to be reviewed and to a lesser extent witnesses to be interviewed. A second category of documents includes draft copies of the complaint submitted to Hill, Betts & Nash (*see, e.g.,* List II—Nos. 6 & 7) and a series of memoranda regarding suggested discovery requests and discovery responses (*see, e.g.,* List II—No. 17).

The plaintiff has set forth an extraordinarily broad range of matters about which Palast seeks to express his expert opinion. Indeed the Rule 26 statement of his proposed testimony appears to encompass virtually the entire subject matter of the complaint. In the memoranda described above, Palast expresses views and summarizes facts about the very matters which purport to be the subject of his expert opinion. Although these statements often are made in the context of assessments of the evidence, they are no less expressions of opinion and summaries of facts which he apparently intends to relate at trial. This is true as well of the draft complaints prepared by Palast since many of the allegations of the complaint in large measure represent his opinions.

■■■ I do not question the good faith of plaintiff's counsel in failing to disclose all of these documents. The memoranda arguably in some instances reflect Palast's strategies on how to proceed in the investigation as opposed to a pure recitation of facts or opinion. Upon examination of the documents, however, I find that the strategies articulated are inextricably intertwined with Palast's overall opinions and views.[3] Moreover, redaction of this material is not appropriate where, as defendants have argued, the level of Palast's involvement in the direction of this case is itself a relevant line of inquiry on the question of bias. Even if the work-product privilege applies, defendants' need to uncover facts to effectively cross-examine a significant expert witness on his interest in the case would constitute a showing sufficient to overcome the privilege. Plaintiff cannot proffer Palast as a disinterested expert witness and at the same time shield from scrutiny his major role in the formulation of this case.

To the extent that memoranda reflect discussions with other witnesses about the general subject of Palast's testimony, this information should be provided as well. (*see, e.g.,* List II—No. 2). Where the expert has acquired information relevant to his opinion, defendants should not be bound by his statement that he did not consider it.

Finally, there are a series of memoranda which constitute pure work-product and cannot arguably be viewed as expressions of Palast's expert opinion. These documents consist of drafts of discovery requests to defendants (List II—Nos. 17, 18, 20, 21, 22, 23, 24 and 25). Defendants have made no showing of need for materials such as these. They have never argued that they are entitled to such documents. Accordingly, they need not be produced.

---

**3.** Plaintiff was directed to provide the court with an explanation as to the basis for the work-product claim with respect to each document. Instead counsel made the general statement that all the documents contain work-product and trial preparation material. There has been no showing that any document contains the attorney's mental impressions, opinions or conclusions as opposed to Palast's work-product. I note that there are handwritten notes on several of the documents. Were these counsel's notes they would be protected. I can only assume that they are Palast's own notes.

### B. Conversations with Messrs. Dick, Daly, Blau and Ms. Pool

■ As set forth above, the defendants should be able to cross-examine Palast about conversations he had with persons having information which would naturally pertain to his opinion. Accordingly, he is directed to respond to questions regarding his conversations with the above-named individuals.

### C. Palast's Income from Suffolk County

■ If no documents exist from which Palast can determine his specific share of the income received by Union Associates from Suffolk County, he is directed to provide his best estimate of that amount and he is further directed to estimate the percentage of his professional income attributed to his work for Suffolk County. Having provided the total amount of money paid to Union Associates for 1986—1988, plaintiff is not required to breakdown the amounts paid to employees Chalpin, Stewart and Raskin.

### D. Production of Palast's diaries, calendars and notebooks

■ The extent of expert discovery is largely within the discretion of the court. Fed.R.Civ.P. 26(b)(4)(A)(ii). Extensive discovery has been produced and ordered in regard to Palast, including the production of an expert report, damage calculations, a lengthy affidavit outlining his views, his annotated rate case documents, three days of deposition, and the discovery ordered herein. This is more than sufficient. The witness will not be required to produce his diaries, notebooks and calendars.

### E. The Continued Deposition of Palast

The documents ordered produced herein are not voluminous. Although their review may generate some additional questions for Palast, I do not see that they provide a basis to extend for any substantial period the half-day deposition already ordered. In view of the production of these memoranda and the additional lines of inquiry ordered herein, I will extend the Palast deposition from a half-day to five hours.

Accordingly, it is hereby

1. Ordered that plaintiff produce by 5:00 p.m. on September 23, 1988, the Palast memoranda with the exception of documents numbered 17, 18; 20–25 on List II. It is further

2. Ordered that Palast appear for his continued deposition no later than two days before his scheduled trial testimony unless a different schedule is mutually agreed upon by all parties.

SO ORDERED.

### LIST I

*Palast Documents Produced or Produced in Part*

1A. 5/6/86  UA Estimate

2A. 7/14/86 Memo to McCallion, Hammond, Cartusiello

3A. 11/17/86 UA Estimate

4A. 11/28/86 Memo to McCallion, Arnott, Saporta, Cartusciello

5A. 12/6/86 Memo to McCallion, O'Neill, Arnott, Saporta, Cartusciello

6A. 2/17/87 Memo to McCallion, O'Neill, Arnott, Saporta, Cartusciello, HBN

7A. 6/9/87  Memo to McCallion, Persky, Sager, Holman, HBN

8A. 7/30/87 Memo to McCallion, Persky, HBN

9A. 8/6/87  Memo to McCallion. Persky

10A. 8/13/87 Memo to McCallion, Persky, HBN

11A. 9/1/87  Memo to Persky, HBN

12A. 7/21/88 Memo to Persky, HBN

13A. 7/22/88 Memo to Persky, HBN

### LIST II

*Palast Documents Withheld*

1. 7/17/86 Memo to McCallion, Hammond, O'Neill, Cartusciello

2. 8/15/86 Memo to McCallion, O'Neill, Cartisciello

3. 10/17/86 Memo to McCallion, HBN

4. 10/24/86 Memo to McCallion, O'Neill, HBN

5. 10/26/86 Memo to McCallion, O'Neill, Cartusciello, HBN

6. 11/11/86 UA Draft

7. 11/12/86 Memo to McCallion, Arnott, HBN

8. 11/22/86 Memo to McCallion, Arnott, Cartusciello

9. 11/26/86 Memo to McCallion, Arnott, Saporta, Cartusciello

10. 11/28/86 Memo to McCallion, Arnott, Saporta, Cartusciello

11. 12/1/86 Memo to McCallion, Arnott, Saporta, O'Neill, Cartusciello

12. 12/16/86 Memo to Arnott, HBN

12A. 12/29/86 Memo to McCallion, O'Neill, Saporta, Arnott, Cartusciello

13. 1/17/87 Memo to McCallion, O'Neill, Saporta, Arnott, Cartusciello

14. 1/18/87 Memo to McCallion, O'Neill, Saporta, Arnott, Cartusciello

15. 1/13/87 Memo to McCallion, O'Neill, Saporta, Arnott, Cartusciello, HBN

16. 2/17/87 Memo to McCallion, O'Neill, Saporta, Arnott, Cartusciello, HBN

17. 3/6/87 Memo to McCallion, O'Neill, Saporta, Arnott, Cartusciello, HBN

18. 3/8/87 Memo to McCallion, O'Neill, Holman, Arnott, Cartusciello, HBN

19. 5/1/87 Memo to Hon. Wayne Prospect, Hoffman

20. 5/30/87 Memo to Hon. Wayne Prospect, Hoffman

21. 6/2/87 Memo to HBN

22. 6/3/87 Memo to HBN

23. 6/4/87 Memo to HBN

24. 6/5/87 Memo to HBN

25. 6/6/87 Memo to HBN

26. 6/11/87 Memo to Persky, HBN

27. 6/20/87 Memo to Persky, Holman, HBN

28. 7/21/87 Memo to McCallion, Persky, Paster, HBN

29. 8/6/87 Memo to Hon. Greg Blass, Hon. Wayne Prospect

30. 8/7/87 Memo to Hon. Greg Blass, Hon. Wayne Prospect

31. 10/28/87 Memo to Persky, McCallion, HBN

32. 11/2/87 Memo to McCallion, HBN

33. 10/28/87 Memo to McCallion, HBN

34. 3/23/88 Memo to Cartusciello, HBN

35. 3/15/88 Memo to Kolker, Johnson, HBN

36. 3/28/88 Memo to Persky, HBN

37. 4/28/88 Memo to Cartusciello, HBN