**B.C.F. OIL REFINING, INC., Plaintiff,**

v.

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Defendants.**

No. 94 Civ. 8565(CBM).

United States District Court, S.D. New York.

Jan. 29, 1997.

Michael J. Grudberg, Stillman & Friedman, P.C., New York City, for B.C.F. Oil Refining, Inc.

William H. Roth, Kelly & Roth, New York City, for Clean Venture, Inc.

Robert F. Roarke, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, Robert F. Roarke, Wilson Elser Moskowitz Edelman & Dicker, New York City, for Miller Environmental Group, Inc.

## OPINION

MOTLEY, District Judge.

Plaintiff BCF Oil Refining, Inc., formerly an oil refining company, brought this action against defendant Consolidated Edison Company of New York, Inc., ("Con Edison") alleging that Con Edison distributed contaminated oil to plaintiff. Plaintiff has also brought claims against other entities for allegedly transporting such contaminated oil from Con Edison and delivering it to plaintiff. The matter currently before the court is the resolution of a discovery dispute that has arisen between plaintiff and defendant Con Edison.

## I. BACKGROUND

Defendant Con Edison seeks to compel production of 50 documents which plaintiff has refused to produce on the grounds that they are privileged under the work product doctrine. While the documents cover a wide variety of subjects, they all concern communications with and work performed by plaintiff's expert and the expert's subcontractor. Defendant argues that all of these documents should be produced in accordance with Rule 26, subsections (a)(2) and (b)(4), which require that an expert disclose all material "considered by the [expert] witness in forming the opinion." Fed.R.Civ.P. 26(a)(2), (b)(4). Plaintiff maintains that (1) all material considered by the expert has been produced, (2) the contested material is not within the scope of 26(b)(4), and (3) the information is privileged under Rule 26(b)(3), the codification of the work product doctrine. The court has been provided with all of the documents for in camera review.

## II. DISCUSSION

The documents may be divided into five categories. First, there are those documents which, though coming from plaintiff's expert (or sent to him) have nothing to do with the preparation of his expert report or his expert testimony. These documents need not be produced. However, the second category of documents, consisting of material consulted or generated by the expert in connection with his role as an expert, must be produced. The third category of documents are those which contain data provided by plaintiff's counsel to the expert for his review. Significantly, these documents do not contain the attorney's mental impressions or opinions but merely relay facts which the expert is presumably expected to consider. These documents also must be produced. The documents of the fourth category, which contain the thoughts and mental impressions of the attorney and were given to the expert for his consideration, require the most rigorous analysis since there is a clear split of authori-

ty on how to deal with them. However, for the reasons that follow, the court holds that these documents must also be produced. Finally, there is a series of documents consisting of notes taken or memoranda generated by counsel after having had oral conversations with the expert. These documents were never shown to the expert, and accordingly, they are privileged work product and do not have to be produced.

## A. Documents Unrelated to Expert's Testimony

These documents can be split into two subcategories: (1) invoices sent either by the expert or the subcontractor to plaintiff, and (2) material dealing with the expert's role not as an expert, but only as a consultant for plaintiff. Each of these is discussed in turn.

### 1. Invoices

**Documents 30, 31, 33, 34, 40, 42, 44, 45, 47** [1]

 This matter is easily dealt with, as there is nothing in Rule 26 which requires a party to turn over invoices that are not directly related to the production of an expert report. These are not documents which are "considered" by an expert in making his opinion and would be of little use to defendant in his cross-examination.[2]

### 2. Material Related to Expert's Role as Consultant

**Documents 13, 18, 23, 24, 35, 36, 37, 38, 50**

 The expert in this case was not hired by plaintiff exclusively to give testimony about the alleged contamination of plaintiff's storage facility by defendants. He was also hired as a technical consultant whom plaintiff used in order to conduct depositions of adverse parties, formulate discovery requests, and perform similar tasks which required expertise of a technical nature. Defendant argues that documents relating to the expert's role as consultant should be disclosed

and that plaintiff should not be able to use the "gray area between the experts' testifying and nontestifying capacities to shield information that relates to the opinion expressed in [the expert's] August 1996 expert report." Defendant Con Edison's Response Letter to Plaintiff's Counsel's 11/3/96 (Nov. 15, 1996).

The case of *Beverage Marketing v. Ogilvy & Mather Direct Response, Inc.*, 563 F.Supp. 1013 (S.D.N.Y.1983) addresses this issue directly. In that case, the defendant refused to produce an expert report [3], arguing that it was meant only as "an analysis of [plaintiff's expert] report" and did not relate directly to the expert testimony of defendant. The court rejected this argument and ordered the report produced. Significantly, however, the court did state:

> It is conceivable that an expert could be retained to testify and in addition to advise counsel outside of the subject of his testimony. Under such a circumstance it might be possible to claim a work product privilege if this delineation were clearly made. Such is not this circumstance.

*Id.* at 1014.

This principle was later applied in the case of *Detwiler v. Offenbecher*, 124 F.R.D. 545 (S.D.N.Y.1989). In that case, the defendant sought to compel documents reviewed by the plaintiff's expert for the purpose of proposing questions to a particular witness at a deposition. The court held that these documents did not have to be produced since they were unrelated to the expert's testimony. The court did state, however, that "to the extent [the expert] reviewed documents in his role as an expert that he previously had reviewed in his role as consultant, the delineation between those roles would become blurred and those documents would be discoverable under *Beverage Marketing.*" *Id.* at 546.

---

**1.** For the court's convenience, plaintiff assigned a number to each of the 50 documents submitted for in camera review. To avoid confusion, the court uses the same numbering here.

**2.** If defendant were contesting the amount of compensation that plaintiff's expert was receiving, then the invoices might be relevant. However, defendant has nowhere indicated that this is

the case and has only demanded disclosure of these documents on the grounds that they were "considered" by the expert in forming his opinion.

**3.** As will be discussed in more detail *infra*, the requirement of an expert report being produced was not instituted until 1993, ten years after the *Beverage Marketing* case was decided.

■ The rule to be gleaned from these two Southern District cases is that documents having no relation to the expert's role as an expert need not be produced but that any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery.

■ In this case, plaintiff insists that the vast majority of the documents submitted relate to the expert's role as a consultant. However, the court has found only ten documents in which this is clearly established. These ten documents deal either with documents requests or preparations for depositions and plaintiff will not be required to produce these documents. All other documents, however, which plaintiff claims have nothing to do with the expert's testimony, cannot be withheld on the authority of *Beverage Marketing* and *Detwiler* since it is not clear whether the expert reviewed them solely as a consultant or whether they informed his expert opinion as well.

## B. Material Generated By the Expert In Connection With His Report and Expert Testimony

### Documents 4, 7, 10, 11, 22, 28, 29, 32, 43

These documents were written not by attorneys but by the expert himself arguably in connection with the preparation of his expert report and testimony. There is a good amount of authority indicating that these items cannot be considered work product. First of all, there are the Advisory Committee Notes to the 1970 Amendment to Rule 26, which state that "the new provisions of subdivision (b)(4) reject as ill-considered the decisions which have sought to bring expert information within the work product doctrine." Advisory Committee Notes, 1970 Amendment; Fed.R.Civ.P. 26(b)(4).[4]

In addition to the Committee Notes, there are numerous cases both within the Second Circuit and outside of it which have held that documents generated by experts are not work product within the meaning of Rule 26(b)(3). *See, e.g., Beverage Marketing,* 563 F.Supp. at 1013–15; *Quadrini v. Sikorsky Aircraft,* 74 F.R.D. 594 (D.Conn.1977); *County of Suffolk v. Long Island Lighting Co.,* 122 F.R.D. 120, 122–23 (E.D.N.Y.1988); *Hewlett–Packard Co. v. Bausch & Lomb,* 116 F.R.D. 533, 536 (N.D.Cal.1987) ("It is quite clear that Rule 26 does not include within the definition of 'work product' documents generated or consulted by experts in connection with litigation."). Courts have even extended the scope of the rule to allow disclosure of "drafts of reports or memoranda experts have generated as they develop the opinions they will present at trial." *Id.; accord Long Island Lighting,* 122 F.R.D. at 122.

■ In fact, plaintiff does not even attempt to argue that documents generated by an expert in connection with his role as an expert are privileged under the work product doctrine but only maintains that these documents do not relate to the expert's testimony. However, this is far from clear after an in camera review of the disputed documents, and, for the reasons stated *supra,* plaintiff cannot make this argument in light of such ambiguity. Defendant should not have to rely on plaintiff's representation that these documents were not considered by the expert in forming his opinion.

## C. Documents Containing Facts Provided By the Attorney to the Expert

### Documents 3, 6, 25, 27, 46

■ Certain documents among the fifty are clearly facts or assemblages of facts which were provided to the expert for his review and do not contain mental impressions or opinions of an attorney. There is ample authority that any facts provided to an

---

**4.** The 1970 Amendment allowed a party to serve interrogatories requiring an adverse party to identify experts and "state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Fed.R.Civ.P. 26(b)(4) (1992) (amended 1993). Rule 26 was amended in 1993 so that all of this information (and, as is ex-

plained in Sec. II.D *infra,* even more information) is now required to be disclosed by the expert himself in a report. Fed.R.Civ.P. 26(a)(2), (b)(4). Thus, while the 1970 Rule has been amended, the principle that documents generated by an expert are not work product remains in full force.

expert, even if provided by an attorney, are required to be disclosed. *Long Island Lighting,* 122 F.R.D. at 122 ("In general, the work product privilege has been held not to apply to opinions and documents *generated or consulted* by an expert retained to testify at trial.") (emphasis supplied). *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 595 (3d Cir. 1984) ("Of course, where the same document contains both facts and legal theories of the attorney, the adversary party is entitled to discovery of the facts."); *Haworth v. Miller,* 162 F.R.D. 289, 295 (W.D.Mich.1995) ("[A]ll factual information considered by the expert must be disclosed in the [expert] report.")

It should also be noted that the policies underlying the work product doctrine, as first articulated by the Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), are not substantially eroded by requiring disclosure of *facts* given to testifying experts. In *Hickman,* the Court created the work product doctrine (later codified in Fed.R.Civ.P. 26(b)(3)) and explained its necessity as follows:

> In performing his various duties ..., it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.

*Id.* at 510–11, 67 S.Ct. at 393.

■ The ability of an attorney to work in privacy and plan litigation strategy is not seriously compromised when the facts (as opposed to opinions and litigation strategies) which the attorney discloses to an expert are discoverable. While it is true that the attorney has an interest in being able to "sift ...

the relevant from the irrelevant facts," *Id.* at 510–11, 67 S.Ct. at 393, this interest is not as strong as the interest in planning litigation strategy and discussing the merits of a client's case without interference [5]. Furthermore, the policy is even weaker when those facts are presented to an expert who considered them before giving his expert opinion. The need to prevent interference by an adversary seems considerably outweighed at that point by the need of the adversary to know the basis of the expert's opinion.

This conclusion is also clear from the text of Rule 26(a)(2), which states that an expert report must include the "data or other information considered by the witness...." It would strain credulity to maintain that the Rule somehow exempts factual information that counsel gave the expert.

## D. Attorney Opinions Reviewed By the Expert

### Documents 19, 20, 21, 39, 48

■ These are documents reviewed by plaintiff's expert which contain the mental impressions, opinions, and, in some cases, litigation strategies of plaintiffs attorneys. This is the most difficult series of documents since such material touches the core policies underlying both the work product doctrine and the principle of expert disclosure. As might be expected of such difficult questions, there is a clear split of authority on the subject. However, on the basis of a recent amendment to Rule 26, the court holds that these documents must also be produced. Before explaining how the amendment affects the discoverability of these documents, however, a brief description of the law as it existed prior to the 1993 Amendment is necessary.

---

5. Thus, for example, Rule 26(b)(3), which protects work product information, does allow such information to be disclosed when the adverse party has demonstrated a "substantial need" for the protected material and it cannot otherwise be obtained "without undue hardship." Fed. R.Civ.P. 26(b)(3). However, the Rule goes on to say that in ordering discovery of such material, "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or other legal theories of an attorney...." *Id.*

This shows that work product which betrays the attorney's opinions and mental impressions deserves more protection than work product which is a mere assemblage of facts. *See also Upjohn v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (holding that work product containing an attorney's opinions was entitled to 'special protection' and that therefore an adverse party could not get access to such documents merely upon a showing of substantial need).

### 1. Prior to the 1993 Amendment

Prior to the 1993 Amendment, Rule 26(b) read in relevant part:

(b) Discovery Scope and Limits. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) In General ... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence....

(4) Trial Preparation: Experts. Discovery of facts known and opinions known by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial may be obtained only as follows:

(A)(I) A party may through interrogatories require any other party to identify each person the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means....

Fed.R.Civ.P. 26(b) (1992) (amended 1993).

There was a significant divergence of views under this Rule as to the discoverability of an attorney's opinion work product which had been shared with a party's expert. At one end of the spectrum stood the only Circuit case to have dealt with the issue, *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 595 (3d Cir. 1984), which held that any opinion work product generated by an attorney was shielded from discovery even if given to the party's expert. The court interpreted the term "facts known and opinions known" not to include an attorney's opinions and mental impressions. The court acknowledged that this could be a burden for the district courts in some cases since the court would be required to undertake an in camera inspection of attorney generated documents which contained both facts and opinions and redact from them all opinions, but it said that the

situations in which problems of this sort would not be solved by the parties themselves were "few" and were clearly outweighed by the policies underlying the work product doctrine as articulated in *Hickman*. *Bogosian*, 738 F.2d at 592, 595–96. The court also noted that Rule 26(b)(3), which allows an adverse party to obtain material protected under the work product doctrine upon a showing of "substantial hardship," states in a second sentence that in disclosing such material "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney ... concerning the litigation," thereby indicating that opinion work product deserves even more protection than regular work product. *Id.* at 592–93. *See also* n. 5 *supra*. Furthermore, the *Bogosian* court held, the Supreme Court has "stressed the special attention [given] to work product revealing the attorney's mental processes." *Id.* at 593 (quoting *Upjohn v. United States*, 449 U.S. 383, 400, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981)). There are several district court cases which used similar analysis to reach the same conclusion. *See North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.*, 108 F.R.D. 283, 286 (M.D.N.C. 1985); *Hamel v. General Motors Corp.*, 128 F.R.D. 281, 282–83 (D.Kan.1989); *Dominguez v. Syntex Laboratories*, 149 F.R.D. 158 (S.D.Ind.1993).

On the other end of the spectrum were a number of district court cases which held that any opinion work product shown to an expert was automatically discoverable. Such cases usually defended their decisions on the grounds that it is fundamental that an adverse party be able to determine to what extent counsel's observations, even if nothing more than opinions, affected the testimony of the expert. Furthermore, the courts in these cases discounted the "special protection" afforded work product which reveals an attorney's opinion on the grounds that Rule 26(b)(3) begins with the phrase, "[S]ubject to the provisions of subdivision (b)(4) of this rule." Therefore, the *Bogosian* court was in error in relying upon Supreme Court precedents which did not deal with information covered by Rule 26(b)(4). *Intermedics, Inc.*

*v. Ventritex, Inc.*, 139 F.R.D. 384, 392 (N.D.Cal.1991) (holding after an extensive review of the policies underlying subsections 3 and 4 of Rule 26(b) that communications from counsel to a testifying expert are discoverable to the extent that they relate to matters about which the expert will testify); *see also Boring v. Keller*, 97 F.R.D. 404, 408 (D.Colo.1983); *William Penn Life v. Brown Transfer and Storage*, 141 F.R.D. 142 (W.D.Mo.1990).

In addition, there were a number of cases that tried to "balance" the policies underlying the work product doctrine with the policy of allowing an adverse party to discover the basis of an expert's opinion. One such example is *Occulto v. Adamar of New Jersey*, 125 F.R.D. 611, 615 (D.N.J.1989), where the court held that a draft of an expert report which appeared to have been written entirely by an attorney and retyped by the expert was discoverable. The court, in purporting to apply *Bogosian*, created a balancing test in which the most important factors were the degree to which expert's opinion derived from the alleged work product and whether the alleged work product was primarily factual or "laced with the. attorney's intimate observations." *Id.* at 615–16. A similar but slightly more liberal approach was taken by the court in *SiLite v. Creative Bath Prods., Inc.*, 1993 WL 384562 (N.D.Ill.1993), where the court held that "disclosure to the expert does not result in the automatic waiver of privileges, but it does normally lead to discovery unless the information is clearly the attorney's mental processes and clearly could not have influenced the expert." *Id.* at 2. (quoting *Mojica v. Doboy Packaging Machinery*, 1987 WL 7813 (N.D.Ill.1987)).

Thus, prior to the 1993 Amendment, there was a great deal of uncertainty as to the discoverability of opinion work product when reviewed by an expert.

## 2. The Present Rule 26

Amended Rule 26 does away entirely with the need for interrogatories to determine the substance of an expert's testimony. Instead, under Rule 26(a)(2), an expert must file a report which contains, *inter alia*, "a complete statement of all opinions to be expressed and the basis and reasons therefor; [and] the data or other information *considered* by the witness in forming the opinions...." Fed. R.Civ.P. 26(a)(2) (emphasis supplied). In addition, Rule 26(b) gives an adverse party the right to depose a testifying expert and requires that the expert report be provided prior to this deposition. Fed.R.Civ.P. 26(b).

The changes are quite significant, because rather than requiring an adverse party to seek through interrogatories the "facts known and opinions known" by the experts, as required by the old Rule, a party which plans to call an expert is now required to have the expert prepare his own report disclosing all material *considered by* him, not just material "known" by him. Thus, the reasoning of those cases interpreting the Rule prior to 1993 on this subject is probably obsolete.

There are significantly fewer cases which deal with the subject of opinion work product and discoverable expert information after the 1993 Amendment. One.such case, *Haworth*, 162 F.R.D. at 289–96, held after an extensive review of the 1993 Amendment that opinion work product was still privileged even if given to an expert. The court stated that the Amendment's main purpose was to require the party introducing the expert to provide the basis for his opinion, thereby relieving the adverse party from the requirement of drafting an interrogatory and waiting for a response, which would be a great deal more time-consuming. The only other effect of the Amendment, according to the *Haworth* court, was that all *factual* information would now have to be disclosed, and an attorney could not "make work-product privilege arguments regarding facts or assemblages of facts...." *Id.* at 295. Finally, the court emphasized the importance of the work product doctrine and stated:

> For the high privilege accorded attorney opinion work product not to apply would require clear and unambiguous language in a statute. No such language appears here.

*Id.* at 295 (citations omitted). *See also All West Pet Supply v. Hill's Pet Products*, 152 F.R.D. 634, 638 (D.C.Kan.1993) (adhering to the reasoning of *Bogosian* and stating in a footnote that the amended rule required

"only that the data or information, i.e., the facts, considered by the expert must be disclosed notwithstanding the assertion of work product.")

■ There is another post–1993 district court case, however, which indicates that any material given by an attorney to an expert is discoverable, even if it includes the attorney's mental impressions, since such material is "considered" by an expert. *Karn v. Rand,* 168 F.R.D. 633 (N.D.Ind.1996). In *Karn,* the court held that Rule 26(a)(2) "unambiguously provide[s] a 'bright-line' rule in favor of production of any information which the expert considers." *Id.* at 638. The court provided numerous policy reasons in favor of its holding. It argued, for example, that such information is critical if an adverse party is to determine the extent to which the opinion of the expert was influenced by counsel. It also argued that the core precepts of the work product doctrine would be preserved, since an attorney's opinions or mental impressions would not be discoverable unless they were shared with the expert. Finally, the "bright line" rule, because of its clarity, allows parties to know in advance of trial what material will be discoverable and is less burdensome on a court since the court would no longer have to sift through contested documents in order to determine fact from opinion and shield the latter from disclosure. *Id.* at 639–41.

In addition to these policy considerations, there is another important reason that opinion work product should be discoverable; namely, that this reading of Rule 26(b) is consistent with the intent of the drafters of the 1993 Amendment. The Advisory Committee Notes to the 1993 Amendment explain the effect of the Amendment in the following manner:

This paragraph [subsection (a)(2) of Rule 26] imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial so that opposing parties have a reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from other witnesses. . . .

The information disclosed under the former rule in answering interrogatories about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for the deposition of the witness. . . .

The [expert] report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. *Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.*

Advisory Committee Notes, 1970 Amendment; Fed.R.Civ.P. 26(a)(2) (emphasis supplied).

This indicates that one of the purposes of the rule was, as the *Karn* court noted, to resolve the tension between work product and disclosure of expert material by requiring that all materials furnished to an expert must be disclosed in an expert report. *Karn,* 168 F.R.D. at 639. The Note does not indicate that the material considered by the expert that must be disclosed is restricted to factual information; indeed, the consensus among federal courts since the 1970 Amendment had already been in favor of disclosure of factual information. *See* Sec. II.C. *supra.* Rather, the Note evinces an intent to require parties to produce attorney opinions given to the expert and considered by the expert in forming his or her opinion. This is the material, after all, for which privileges had been asserted. *See also* 8 Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice & Procedure § 2016.2 (1994) (stating that the 1993 Amendment was intended "to mandate disclosure despite privilege.")

Finally, as has been noted *supra,* the first phrase of Rule 26(b)(3), the codification of the work product doctrine, has always been "Subject to the provisions of subdivision (b)(4) of this rule." This is further evidence that the drafters of the rule understood the policies behind expert disclosure and the

work product doctrine and have decided that disclosure of material generated or consulted by the expert is more important.

### E. Oral Communications

**Documents 1, 2, 5, 8, 9, 12, 14, 15, 16, 17, 26, 49**

 There remains one final group of documents. These are memoranda to the file, handwritten notes, and similar material which were created by attorneys during their discussions with the expert. To the extent that the material was shown to an expert, such material should be discoverable for the reasons given in Sec. II.D *supra.* On the other hand, some of these documents were not shown to experts (or at least the court is not aware of any evidence that they were shown to experts) but only purport to summarize telephone conversations with experts. The documents are interlaced with the opinions, conclusions, and legal strategies of attorneys.

There is authority which requires conversations between attorneys and experts to be discoverable through deposition. *William Penn Life v. Brown Transfer,* 141 F.R.D. 142, 143 (W.D.Mo.1990) (adopting the position that opinion work product is discoverable and noting that the distinction between oral and written communications "does not override the principles" in favor of expanded discovery of experts); *Intermedics,* 139 F.R.D. at 387. *See also Karn,* 168 F.R.D. at 640 (suggesting that oral communications may be discoverable). Indeed, there does not seem to be a principled difference between oral and written communications between an expert and an attorney insofar as discoverability is concerned. Whether the attorney shows the expert a document that the latter considers in forming his or her opinion or whether the attorney communicates the information orally, the same effect is achieved. In either case, the adverse party needs to know the information in order to conduct an effective cross examination. This is also evident from the text of Rule 26(a)(2), which requires the disclosure of "the data or other information considered by the witness in forming the opinions...." The Rule does not limit this to documents or other forms of written information.

 However, while this may mean that defendant should be entitled to depose plaintiff's attorneys to learn the substance of their conversations with the expert, the principle of expert disclosure cannot go so far as to require disclosure of an attorney's notes which record a conversation and which were never shown to an expert. Simply stated, this is not a document "considered" by an expert in forming his opinion and thus Rule 26(b)(4) is not applicable. The only question, therefore, is whether such material is governed by the work product doctrine, and the court holds that it is because it was prepared by the attorney in anticipation of litigation, as is required by Rule 26(b)(3). Moreover, it contains the opinions of plaintiff's attorneys, and both the text of Rule 26(b)(3) and recent Supreme Court precedent indicate that opinion work product of this sort is entitled to "special protection." *Upjohn,* 449 U.S. at 400; 101 S.Ct. at 688. *See also* n. 5 *supra.* It is only when plaintiff's attorney shows such a document to a testifying expert that the protections afforded under Rule 26(b)(3) give way to the disclosure requirements of Rule 26(b)(4) and the document becomes discoverable.

### III. CONCLUSION

 Based on the foregoing, the court holds that all documents listed in Secs. II.B, II.C, and II.D must be produced pursuant to Fed.R.Civ.P. 26(a)(2) and (b)(4). The court further holds that the documents listed in Secs. II.A and II.E are privileged under Fed.R.Civ.P. 26(b)(3) and do not need to be produced.