THE NEXXUS PRODUCTS CO., R.G. Shakour, Inc., and Lord's & Lady's Hair Salon, Inc., Plaintiffs

v.

CVS NEW YORK, INC., CVS Pharmacy, Inc., and Quality King Distributors, Inc. Defendants

CIV. A. No. 97–40197–PBS.

United States District Court, D. Massachusetts.

June 22, 1999.

Michael P Angelini, Vincent F. O'Rourke, Jr., Bowditch & Dewey, Worcester, MA, for Plaintiffs.

Steven M. Cowley, Brian H. Lamkin, Edwards & Angell, William R. Grimm, Robert Millen, Hinckley, Allen & Snyder, Boston, MA, for Defendants.

## ORDER ON DEFENDANT QUALITY KING DISTRIBUTORS, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

ALEXANDER, United States Magistrate Judge.

Defendant Quality King Distributors, Inc. ("Quality King") has moved to compel the production of documents in response to Quality King's subpoena for production of documents allegedly relied on by three non-party expert witnesses retained by Plaintiffs for purposes of producing their respective expert reports. Defendants assert that under Fed. R.Civ.P. 26(a)(2)(B) & (b)(4)(A), they are entitled to access all documents received and reviewed or created by the testifying expert witnesses in connection with the preparation of their reports. Plaintiffs respond that certain of the requested documents are protected by the work product doctrine, and/or that they are outside the scope of permissible discovery as the experts did not rely on the materials in forming their opinions. For the following reasons, Quality King's motion to compel is DENIED.

This case is a trademark infringement, dilution, and unfair trade practice action, the specific facts of which are not relevant to the matter under consideration here. The instant discovery dispute takes place against the backdrop of a larger debate concerning the correct interpretation of the 1993 amendments to Fed.R.Civ.P. 26, and the associated commentary provided by the Advisory Committee. And so we begin with a review of the relevant rules:

26(a)(2)(B) states

"... [required disclosure of experts] with respect to a witness who is retained or specially employed to provide expert testimony in the case ... [shall] be accompanied by a written report prepared and signed by the witness. *The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions ...*" (Emphasis supplied.)

26(b)(3) substantially codifies the doctrine of work product protection announced in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and it commands that

"subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision

(b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... *only* upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.... *when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.*" (Emphasis supplied.)

26(b)(4)(A) provides:

"A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under subdivision (a)(2)(B), the deposition shall not be conducted until after the report is provided."[1]

The 1993 Advisory Committee's Note states, with regard to 26(a)(2)(B),

"[this paragraph] requires that persons retained or specially employed to provide expert testimony ... must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefore. The information disclosed under the former rule in answering interrogatories about the 'substance' of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness.... [the Rule] *does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, ... this assistance may be needed....* The report is to disclose *the data and other information* considered by the expert and any exhibits or charts that summarize or support the expert's opinions. *Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions-whether or not ultimately relied upon by the expert-are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.*" (Emphasis supplied.)

With regard to 26(b)(4)(A), the 1993 Advisory Committee's Note states:

"... 4(A) is revised to provide that experts who are expected to be witnesses will be subject to deposition prior to trial, ... The requirement under subdivision (a)(2)(B) of a complete and detailed report of the expected testimony of certain forensic experts may, moreover, eliminate the need for some such depositions or at least reduce the length of depositions."

Courts are divided on the issue of whether and to what degree the work product privilege applies to discovery material presented to an expert witness who will testify at trial. Some courts and at least one commentator have held that the requirements of 26(a)(2) "trump" any assertion of work product or privilege. *See B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of N.Y., Inc.,* 171 F.R.D. 57, 66 (S.D.N.Y.1997) (The [1993 Advisory Committee] Note evinces an intent to require parties to produce attorney opinions given to the expert and considered by the expert in forming his or her opinion.... the drafters of the rule understood the policies behind expert disclosure and the work product doctrine and have decided that disclosure of material generated or consulted by the expert is more important.); *Karn v. Ingersoll–Rand Co.,* 168 F.R.D. 633, 639 (N.D.Ind. 1996) ("new Rule 26 and its supporting commentary reveal that the drafters considered the imperfect alignment between 26(b)(3) and 26(b)(4) under the old Rule, and clearly resolved it by providing that the requirements of (a)(2) 'trump' any assertion of work product or privilege."); *see also Intermedics, Inc. v. Ventritex, Inc.,* 139 F.R.D. 384, 387 (N.D.Cal.1991) ("absent an extraordinary

---

**1.** 26(b)(4)(B) concerns discovery of "facts known or opinions held" by an expert "who is not expected to be called as a witness at trial." Because the Plaintiffs' experts are expected to testify, (Plaintiffs' Memo. in Opp. at 3; Defs.' Memo in Support at 3), the rule has no relevance here.

showing of unfairness that goes well beyond the interests generally protected by the work product doctrine, written and oral communications from a lawyer to an expert that are related to matters about which the expert will offer testimony are discoverable, even when those communications otherwise would be deemed opinion work product."); 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2016.2 (1994) ("At least with respect to experts who testify at trial, the disclosure requirements of Rule 26(a)(2), adopted in 1993, were intended to pretermit further discussion and mandate disclosure despite privilege.").

Other courts and commentators have held, however, that Rule 26(a)(2) does not annul the attorney work product privilege. *See Magee v. Paul Revere Life Ins. Co.,* 172 F.R.D. 627, 642–43 (E.D.N.Y.1997) ("Rule 26(a)(2) should not be construed as vitiating the attorney work product privilege, and the laudable policies behind it, in the absence of clear and unambiguous authority under the Federal Rules of Civil Procedure."); *Haworth, Inc. v. Herman Miller, Inc.,* 162 F.R.D. 289, 294–95 (W.D.Mich.1995) ("this Court concludes that the protection accorded an attorney's mental impressions and opinions by the Supreme Court in *Hickman v. Taylor,*(citation omitted), and substantially codified in 1970 in Rule 26(b)(3), was intended to apply to discovery from experts.... For the high privilege accorded attorney opinion work product not to apply would require clear and unambiguous language in a statute.... No such language appears here."); *All West Pet Supply Co. v. Hill's Pet Prod.,* 152 F.R.D. 634, 638 (D.Kan.1993)(holding that protection afforded by Rule 26(b)(3) for attorney work product was not waived by sharing the documents in question with expert witnesses); *see also Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 593–94 (3rd Cir.1984) ("Even if examination into the lawyers role [in framing an expert's opinion] is permissible, ... the marginal value in the revelation on cross-examination that the expert's view may have originated with an attorney's opinion or theory does not warrant overriding the strong policy against disclosure of documents consisting of core attor-

ney's work product."); 6 James Wm. Moore et al., Moore's Federal Practice, § 26.80[1] (3rd ed. 1998) ("The *Haworth* holding is correct, because nothing in the advisory committee notes to the 1993 amendments (citation omitted) suggests that Rule 26(b)(4)(A) was intended to abrogate the enhanced protection for opinion work product recognized by the Supreme Court in *Upjohn Co. v. United States,* 449 U.S. 383, 401, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)."). Moore's also notes that the *Haworth* rule has "three additional benefits: (1) it does not favor wealthy parties who can afford to hire both testifying and non-testifying experts, (2) it discourages the use of strained hypotheticals between expert and counsel in order to avoid disclosure, and (3) it avoids a potential conflict with the Rules Enabling Act by not abolishing or modifying an arguably evidentiary privilege." Moore's § 26.80[1].

Court's favoring the "bright line" approach of the *Karn* Court have required disclosure of all documents, including core attorney work product, considered by an expert in forming her opinion. These courts have emphasized the importance of ensuring that the confidence lodged by the trier of fact in the representation that an expert's opinion has been independently derived is well placed. In other words, the fact finder, in assigning the proper weight to a given expert's testimony, should be aware of the extent of the influence, if any, counsel has had in shaping or coloring the opinion of the expert. *See Karn,* 168 F.R.D. at 639; *Intermedics* 139 F.R.D. at 395–96. The *Intermedics* Court stressed the heightened potential of a jury to be misled as to the source of an expert's opinion when the expert presents scientific and technical information that is often outside the realm of the average juror's experience—particularly given the general tendency of many people to equate scientific data with objective truth. *See Intermedics,* 139 F.R.D. at 395–96. Juries hearing expert testimony on technical matters may be less capable of detecting inconsistencies or other deficiencies in the testimony. In the view of these courts, mandating disclosure of all materials considered or relied on, including attorney opinion materials, would serve as an

incentive to attorneys to refrain from attempts to influence or control the analysis or opinion of an expert witness. *See generally Karn*, 168 F.R.D. 633; *B.C.F. Oil Refining, Inc. v. Consolidated Edison Company of New York*, 171 F.R.D. 57.

The risk that an expert's opinion has been influenced by counsel, and that the fact finder could be misled as to the source of an expert's opinion, is mitigated, however, by the fact that the jury hears the testimony in the context of the trial as a whole where the expert's opinion is subject to examination and challenge by other experts in the field, and is compared to the normative understanding of the specific field of inquiry. *See Magee*, 172 F.R.D. at 643; *Haworth*, 162 F.R.D. at 295–96. Moreover, it is conceivable that the adoption of the bright line rule would encourage counsel to withhold material from an expert to prevent disclosure, thus arguably impairing the expert's ability to fully evaluate the relevant issues and the attorney's ability to receive a full and objective assessment of the issues.

The interest in facilitating effective cross-examination directed to exposing the extent of counsel's influence on an expert's opinion is a related concern cited by courts favoring the bright line approach. *See Karn*, 168 F.R.D. at 639; *Intermedics*, 139 F.R.D. at 395. The argument is that cross examination can only be effectively conducted if opposing counsel has access to all of the information that shaped or potentially influenced the expert's opinion. The central inquiry on cross examination of an expert witness, however, is not the question of if and to what extent the expert was influenced by counsel; rather it is this: what is the basis for the expert's opinion. Cross examination on the adequacy and reliability of the stated basis of the expert's opinion can be conducted effectively absent a line of questioning on counsel's role in assisting the expert. *See All West Pet Supply*, 152 F.R.D. at 638 n. 6.[2] Deficiencies in the basis of an expert's opinion will become evident in light of cross examination on the stated

sources of the expert's opinion and in light of the testimony of other experts.

Finally, courts in favor of full disclosure have construed the language of 26(a)(2) and the 1993 Advisory Committee's commentary on the rule's amendments to favor total disclosure of all materials considered and relied on, including attorney opinion. *See Karn*, 168 F.R.D. at 638–39; *B.C.F. Oil*, 171 F.R.D. at 66. This Court, however, agrees with the construction afforded the rule in the *Haworth* line of cases.

The most reasonable reading of the 1993 Advisory Committee Note is that the drafters intended to put to rest any dispute concerning expert disclosures and to clarify that disclosure of factual materials-"data and other information ... and any exhibits or charts that summarize or support the expert's opinion"—whether considered or relied on by an expert, was required under the rule. *See All West Pet Supply*, 152 F.R.D. at 639 n. 9 (interpreting the revised rule and comment to require disclosure of the facts considered by an expert, and "not compel[ling] the production of the documents that transmitted the data or information to the expert, which may well, as here, contain protected work product other than data or information."); *Haworth* 162 F.R.D. at 295 (same); *Magee*, 172 F.R.D. at 642–43 (same); *see also Hickman*, 329 U.S. at 514, 67 S.Ct. 385 ("[U]ntil some rule or statute definitely prescribes otherwise, we are not justified in permitting discovery [of work product protected materials] as a matter of unqualified right.").

Based on this Court's review of the relevant cases, the text of the rule and the accompanying Advisory Committee comment, this Court concludes that the required disclosure under 26(a)(2)(B) & (b)(4)(A) does not include core attorney work product considered by the expert. The persuasive reasoning in *Haworth* and the additional considerations set forth in Moore's, *supra*, p. 5, particularly demonstrate the propriety of this reading of the rule. It is this Court's opinion that through continued protection of core attorney work product, communication between

---

2. The *All West Pet Supply* Court agreed with the Court in *Bogosian* that the value of a cross examination that does reveal that the expert's opinion may have been derived from the attorney's theo-

ry does not outweigh the strong interest in protecting core work product. *See* 152 F.R.D. at 638 n. 6.

expert and attorney will remain unconstrained, and will thus better serve both the ultimate truth seeking function of the trial process and the goal of assisting the trier of fact pursuant to F.R.E. 702, 703, and 704 within the framework of our adversarial system.

Now we turn to the question of which of the withheld disclosures, if any, must be produced to the Defendants. Plaintiffs submitted Privilege Logs to the Court describing the documents withheld from production by their experts, Craig L. Moore, Ph.D., Nancy Flinn, and Neil E. Wallach, respectively. In their Objections to Subpoena, Ms. Flinn and Mr. Wallach represent that they "did not review nor rely upon any nonprivileged documents" (Plaintiffs' Memo. at 5), and Plaintiffs now represent that "neither Flinn nor Wallach relied upon any privileged documents in preparing their expert reports, or any other documents ... " (*Id.*) Mr. Moore has disclosed some of the documents he reviewed.

This Court has reviewed the Privilege Logs of Mr. Moore, Ms. Flinn, and Mr. Wallach and finds that Plaintiffs have met their burden of establishing that each of the described documents are work product protected, and therefore not subject to disclosure under 26(a)(2)(B) and 26(b)(4)(A). The materials are documentary and were prepared for trial purposes by Plaintiffs' attorneys and experts. *See* Fed.R.Civ.P. 26(b)(3). Further, with the exception of letters regarding retainer and fees and a fax sent from Ms. Flinn to Attorney Pellegrini on January 22, 1999, the materials considered by Ms. Flinn and Mr. Wallach concern exclusively draft versions of the expert reports. Counsel are not precluded from assisting experts in preparing the expert reports. *See* 1993 Advisory Committee's Note. The Court notes that while the January 22 fax itself need not be disclosed, if Ms. Flinn did consider the articles referred to in the fax, those factual materials would need to be disclosed.

Accordingly, Defendants' Motion to Compel these documents is hereby DENIED.

SO ORDERED.